1999 UT App 245

Geri PASQUIN, Plaintiff and Appellant,

v.

John PASQUIN; Jimmie Pasquin; Estate of Kory Pasquin; Quality Parts, a Utah general partnership; Quality Transport Refrigeration Parts, Inc; Thomas A. Duffin; Daniel O. Duffin; and Does 1–40, Defendants and Appellees.

No. 981293–CA.

Court of Appeals of Utah.

Aug. 26, 1999.

Brian W. Steffensen, Steffensen, Mc-Donald and Steffensen, Salt Lake City, for Appellant.

Carman E. Kipp and Michael F. Skolnick, Kipp & Christian, Salt Lake City, for Appellees Duffin.

Robert H. Copier, Salt Lake City, for Appellee Estate of Kory Pasquin.

Steven L. Taylor, Salt Lake City, for Appellees Pasquin and Quality Transport.

Before Judges BILLINGS, DAVIS, and JACKSON.

## AMENDED OPINION [1]

JACKSON, Judge:

¶ 1 Geri Pasquin (Ms. Pasquin) appeals the trial court's grant of summary judgment to defendants. We are without jurisdiction over the Estate of Kory Pasquin (the Estate) and thus dismiss the appeal as to the Estate. Regarding the trial court's ruling that Ms. Pasquin's lifetime employment and partnership claims were barred by the statute of frauds, we reverse and remand for further proceedings consistent with this opinion. We also remand all Ms. Pasquin's other contract and tort claims against defendants. Finally, we disregard Ms. Pasquin's claims against the Duffins for breach of fiduciary duty because Ms. Pasquin has failed to brief that issue adequately.

## BACKGROUND

¶ 2 "When reviewing summary judgment, we recite the facts in a light most favorable to the nonmoving party." *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1286 (Utah Ct.App.1996). Kory Pasquin and John Pasquin founded Quality Parts (the business), a general partnership, in 1990. At that time, Ms. Pasquin and John Pasquin, Kory Pasquin's parents, were divorced. Sometime in 1991, Kory Pasquin suggested hiring Ms. Pasquin to work at the business answering phones, doing clerical tasks, and helping in other ways. John Pasquin agreed to hire Ms. Pasquin.

¶ 3 The parties' accounts diverge at this point. Ms. Pasquin argues Kory Pasquin promised her lifetime employment with the business, whether or not she was capable of actually doing any work. She says Kory Pasquin assured her that the business would be sold eventually and that she, Kory Pasquin, and John Pasquin would have enough money to retire comfortably. Further, she asserts she and Kory Pasquin entered into an agreement to be partners in the business with John Pasquin.

¶ 4 While the business was organized as a general partnership, Kory and John Pasquin's income was reported on K–1 Forms (Partner's Share of Profits and Losses) and Ms. Pasquin's on 1099 Forms (Miscellaneous Income). John and Kory Pasquin incorporated the business in 1996, forming Quality Transport Refrigeration, Inc. John and Kory Pasquin were the sole shareholders. After the business was incorporated, Ms. Pasquin received W–2 forms reporting her income as an employee. Ms. Pasquin argues Kory Pasquin assured her that her status as an equal owner of the business was unchanged.

¶ 5 Kory Pasquin died in October 1996. Soon after his death, Ms. Pasquin was invited to a meeting at the law offices of Thomas A. Duffin and Daniel O. Duffin (the Duffins), who were attorneys for the business. The Duffins had initially organized the business as a partnership, and later reorganized the business as a corporation. Ms. Pasquin was told at this meeting that John and Kory Pasquin were the sole shareholders in the business. The business's accountant objected, stating that Ms. Pasquin was part of the company, and Ms. Pasquin's daughter from a previous marriage stated that Kory Pasquin had told her Ms. Pasquin was an "equal partner" in the business.

¶ 6 Also at this meeting, John Pasquin acknowledged that he knew Kory Pasquin wanted Ms. Pasquin to have lifetime employment with the business. Ms. Pasquin interprets that statement as an admission that she was promised lifetime employment. Ms. Pasquin alleges that some time after this meeting at the Duffins's office, John Pasquin

---

1. This Amended Opinion replaces the Opinion issued on June 10, 1999, in Case No. 981293–CA.

reduced her wages and refused to pay her insurance and employment taxes (as was their prior practice). She asserts that John Pasquin said he took those actions at the "direction and insistence" of the Duffins.

¶ 7 Shortly after this meeting, Ms. Pasquin filed a complaint against John Pasquin and the business, the Estate, and Jimmie Pasquin.[2] Her complaint contained four causes of action: breach of fiduciary duty and diversion of partnership property, breach of employment contract, intentional interference with contract, and intentional infliction of emotional distress. The complaint also sought declaratory relief. Further, Ms. Pasquin alleged that the Duffins represented her as a partner in the business and that they breached a fiduciary duty owed to her. She also sought damages from the Duffins for intentional or negligent infliction of emotional distress and intentional interference with her employment contract.

¶ 8 The Estate moved for summary judgment, and the other defendants followed suit. The trial court first granted summary judgment to the Estate on October 21, 1997, dismissing "all of plaintiff's claims ... against the Estate" with prejudice. The order also certified, under Utah Rule of Civil Procedure 54(b), that it was a final order for purposes of appeal. On November 3, 1997, the trial court granted summary judgment to the Pasquin defendants and the business, dismissing all causes of action and ruling that Ms. Pasquin's claims for lifetime employment and partnership in the business were barred by the statute of frauds as contracts incapable of performance within one year. Finally, on November 26, 1997, the trial court granted summary judgment to the Duffins, ruling that because there was no evidence that Ms. Pasquin was a partner in the business, there could be no attorney-client relationship between her and the Duffins. Again, the trial court's order dismissed all claims against the

Duffins. Ms. Pasquin filed a notice of appeal on December 9, 1997.

¶ 9 On appeal, John Pasquin and the business argue that Ms. Pasquin was merely an at-will employee and was never promised lifetime employment. Further, they assert that she was never a partner or shareholder in the business. In the alternative, they contend that the alleged lifetime employment contract and partnership agreement are barred by the statute of frauds. The Estate also argues this court lacks subject matter jurisdiction over Ms. Pasquin's appeal, as it relates to the Estate, because she filed her notice of appeal more than thirty days after entry of final judgment against the Estate. Finally, the Duffins argue that the trial court's ruling on the statute of frauds issue was correct. They also assert that the first and only time they had any contact with Ms. Pasquin was at the meeting after Kory Pasquin's death, and that there was no attorney-client relationship between them and Ms. Pasquin.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 First, we determine whether this court has jurisdiction over the Estate. Second, we address whether the statute of frauds bars enforcement of (1) an alleged oral promise for lifetime employment and (2) an alleged oral partnership agreement.[3] Summary judgment is appropriate "only when no genuine issues of material fact exist and when the moving party is entitled to 'judgment as a matter of law.'" *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1289 (Utah Ct.App.1996) (citations omitted). "[W]hen reviewing conclusions of law on a challenge to summary judgment, we review those conclusions for correctness, according no deference to the trial court's legal conclusions." *Breuer–Harrison, Inc. v. Combe*, 799 P.2d 716, 723 (Utah Ct.App.1990). Finally, we address the ruling that "no reasonable jury could find an implied-in-fact employ-

---

**2.** Jimmie Pasquin is John Pasquin's son from an earlier marriage. It is not apparent from the record or the briefs on appeal what role, if any, Jimmie Pasquin played in the business, nor is it evident what claims Ms. Pasquin might have against him or whether he is still a party in this case.

**3.** Because of our disposition of these issues, we need not reach the other issues Ms. Pasquin raises.

ment contract" and the issue of whether Ms. Pasquin waived this issue on appeal.

## DISCUSSION

### I. Jurisdiction Over The Estate

¶ 11 Ms. Pasquin filed her notice of appeal on December 9, 1997, more than thirty days after summary judgment was granted to the Estate on October 21, 1997 (the October 21 Order). Ms. Pasquin argues her appeal is timely because it was filed within thirty days after summary judgment was granted to the Duffins (the last grant of summary judgment in this case), and her "clock" for purposes of appeal did not start running until the last summary judgment was entered.

■ ¶ 12 As a threshold matter, we first determine whether the trial court properly certified the October 21 Order as a final order under Rule 54(b). "Whether an order is eligible for rule 54(b) certification is a question of law that we review for correctness." *West v. Thomson Newspapers*, 835 P.2d 179, 182–83 (Utah Ct.App.1992), *vacated on other grounds*, 872 P.2d 999 (Utah 1994). In this case, the October 21 Order was properly certified because it granted summary judgment for all claims against the Estate. Further, the trial court also made the required finding that there was "no just reason for delay,"[4] and expressly ordered the entry

of judgment as required by Utah Rule of Civil Procedure 54(b).

■ ¶ 13 "An aggrieved party must appeal a Rule 54(b) judgment within the time permitted by [Utah Rule of Appellate Procedure 4(a) ] and may not seek review of the judgment after the remaining claims have been adjudicated." 10 James W. Moore, *Moore's Federal Practice* § 54.26[1] (3d ed.1997). Thus, Ms. Pasquin's notice of appeal, filed more than thirty days after the order was certified, was untimely. This court therefore does not have jurisdiction over the Estate and we dismiss the appeal as it pertains to the Estate.

### II. Statute of Frauds

■ ¶ 14 At issue is whether the one-year clause of the statute of frauds bars an alleged oral contract for lifetime employment and oral partnership agreement. The trial court concluded, as a matter of law, that the purported agreements were agreements incapable of performance within one year and were thus barred by the statute of frauds. Although this issue has seldom been raised in Utah,·courts in both the United States and England, from where our statute of frauds was derived, decided this issue long ago.[5]

¶ 15 Utah's statute of frauds provides that

---

4. We note that the trial court did not explain the reasons why it arrived at this determination, and reiterate that "a brief explanation should accompany all future certifications so that this court may render an informed decision" when evaluating the trial court's discretionary grant of Rule 54(b) certification. *Bennion v. Pennzoil Co.*, 826 P.2d 137, 139 (Utah 1992). Further, "[e]ven though parties may have a rule 54(b) certification from the trial court, they typically should include in their briefs a short discussion on the propriety of the certification in order to assist the appellate court in determining jurisdiction." *West v. Thomson Newspapers*, 835 P.2d 179, 182 n. 3 (Utah Ct.App.1992), *vacated on other grounds*, 872 P.2d 999 (Utah 1994).

5. In light of the venerable and lengthy case law and commentary—reaching back more than 400 years—treating this issue, we find it particularly incredible that none of the parties briefing this appeal cited a single case on point in support of their respective positions on these statute of frauds issues. This absence of reasoned legal argument was so striking as to make the entire

case an excellent candidate for disposition under Utah Rule of Appellate Procedure 24 as we were truly the " 'depository in which the appealing party ... dump[ed] the burden of argument and research' " on this issue. *State v. Larsen*, 828 P.2d 487, 491 (Utah Ct.App.1992) (citation omitted). Nonetheless, we exercise our discretion to reach the statute of frauds issue on the merits, as the parties at least tried to provide legal analysis and the trial court erred as a matter of law.

However, we disregard Ms. Pasquin's reply brief for failure to comply with Utah Rule of Appellate Procedure 24(a)(9). *See* Utah R.App. P. 24(j) ("Briefs which are not in compliance [with Rule 24] may be disregarded or stricken ... sua sponte by the court...."). Ms. Pasquin's reply brief cites no supporting legal authority.

Moreover, we decline to address Ms. Pasquin's claim against the Duffins for breach of fiduciary duty. The "argument" in her opening brief consists of four sentences:

The Duffin Defendants similarly submitted their affidavits purporting to establish that Mrs. Pasquin was never a partner in Quality Parts, that they never considered her a client,

[t]he following agreements are void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement:

> (1) every agreement that by its terms is not to be performed within one year from the making of the agreement.

Utah Code Ann. § 25–5–4 (1998). While the statute of frauds as a whole has been criticized frequently for fostering more fraud than it prevents, the one-year provision has suffered particularly harsh criticism. *See, e.g., C.R. Klewin, Inc. v. Flagship Properties, Inc.*, 220 Conn. 569, 600 A.2d 772, 775–76 (1991). Consequently, as early as the mid–1600s, English courts began to narrowly construe the statute of frauds as a whole, and the one-year clause in particular. *See generally* James J. O'Connell, Jr., Comment, *Boats Against the Current: The Courts and the Statute of Frauds*, 47 Emory L.J. 253 (1998). This early tendency to narrow the application of the one-year provision led to the rule that the words "not to be performed within one year" should be construed very liberally. The courts have interpreted those words to encompass any agreement that could not possibly be performed within one year, without regard to the parties' intentions or the actual subsequent course of events. *See, e.g.,* Restatement (Second) of Contracts § 130 cmt. a (1979) ("[T]he enforceability of a contract under the one-year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded . . . .").

¶ 16 The United States Supreme Court adopted this interpretation as early as the late nineteenth century. *See, e.g., Warner v. Texas & Pac. Ry. Co.*, 164 U.S. 418, 434, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896) ("The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year.").

¶ 17 Our supreme court has also considered the one-year clause, although not for quite some time. In *Zion's Serv. Corp. v. Danielson*, 12 Utah 2d 369, 366 P.2d 982 (Utah 1961), the court held that a contract entered into by the individual members of an incorporated trade association was not barred by the one-year clause. *See id.* at 984–85. Because each member of the corporation was free to leave at any time, the agreement was capable of performance within one year. *See id.* at 985. The court also addressed the one-year clause in *Johnson v. Johnson*, 31 Utah 408, 88 P. 230 (Utah 1906). In that case, the issue was whether an oral promise by a buyer of land to supply the seller with a percentage of crops raised on that land for as long as the seller lived was barred by the statute of frauds. *See id.* at 231. The court concluded that because the seller could die within one year of the contract's formation, "[t]he terms of the agreement do not prevent its full performance within one year from the making thereof. It is well settled that provisions like the one in question do not fall within the [one-year clause of] the statute." *Id.* at 231.

---

and that they were not aware of any document which purported to grant Mrs. Pasquin lifetime employment, among other things. Based thereon, they argued that Mrs. Pasquin could not prevail on her claims, including her claims against them for breach of fiduciary duty, interference with contract and intentional infliction of emotional distress. However, Mrs. Pasquin's sworn testimony states that she was made a partner, that she did consider them to be her attorneys, that she was promised lifetime employment, and such. Mrs. Pasquin's sworn testimony disputed all material facts argued by the Duffin Defendants in their motion.

We note the absence of any citation to legal authority or argument as required by Rule 24(a)(9). Further, we cannot discern from the pleadings the nature of Ms. Pasquin's legal theories. Her vague and indefinite allegations fail to reveal whether she claims the Duffins committed legal malpractice (based on a contract, negligence, or breach of fiduciary duty theory), or breached some other fiduciary duty. Accordingly, we "assume the correctness of the judgment below." *Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1185 (Utah Ct.App.1987).

Finally, point three of the Estate's brief is a rambling commentary on Kory Pasquin's bad character. This text does not meet Rule 24(j)'s mandate that a brief be "free from burdensome, irrelevant, immaterial or scandalous matters." Utah R.App. P. 24(j). We thus disregard point three. *See id.*

¶ 18 Accordingly, we reiterate the well-settled proposition that the one-year clause applies only to contracts that are literally *incapable* of being performed within one year. *See Zion's Serv. Corp.*, 366 P.2d at 985; *Johnson*, 88 P. at 231; *see also Mullins v. Southern Pac. Transp. Co.*, 174 Ariz. 540, 851 P.2d 839, 840 (Ct.App.1992) ("[T]he Statute of Frauds applies only to oral contracts in which there is not the 'slightest possibility' that the contract could be performed within one year....").

### III. Analysis of Ms. Pasquin's Alleged Contracts

¶ 19 The basic principle stated above applies in a similar manner to each of the two agreements at issue here. Both oral lifetime employment contracts and oral partnership agreements are generally held to be agreements capable of performance within one year. In the case of lifetime employment contracts, the courts have reasoned that the death of the employee, or the employee's decision to leave employment, could end the contract within one year. Similarly, in the case of oral partnership agreements, the dissolution of the partnership could happen within one year because any partner can leave the relationship at any time. Thus, neither of the purported contracts at issue here is incapable of performance within one year, and neither is barred by the statute of frauds.

6. Even if Ms. Pasquin had alleged an employment contract with no specific duration (rather than a "lifetime" contract), her claim still would not be barred by the statute of frauds. An employment contract with no specified duration can be terminated at any time by either contracting party, *see Price v. Western Loan & Sav. Co.*, 35 Utah 379, 386, 100 P. 677, 680 (Utah 1909), and thus is capable of performance within one year. *See, e.g., Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 766 P.2d 280, 283 (1988) (stating "courts and commentators have consistently accepted the view that indefinite permanent employment contracts ... fall outside the statute [of frauds] because they are capable of full performance within one-year").

7. Our decision here comports with the clear majority of courts and commentators that have considered this question. *See, e.g., Merlo v. United Way of Am.*, 43 F.3d 96, 102 (4th Cir.1994); *Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 679

### A. Oral Lifetime Employment Contract

¶ 20 Ms. Pasquin asserts that Kory Pasquin promised her lifetime employment with the business. By the very terms of her allegation, the contract is one that could be performed within one year, as Ms. Pasquin could have died within a year of the contract's formation. Accordingly, we hold as a matter of law that the alleged oral contract for lifetime employment is not barred by the statute of frauds.[6] We therefore reverse the trial court's ruling on this issue.[7]

¶ 21 The trial court's summary judgment contained the additional ruling that no reasonable jury could find that an implied-in-fact employment contract existed between the parties. John Pasquin and the business assert that Ms. Pasquin has waived any challenge to this ruling by failing to raise, brief, or argue the issue. We agree. Accordingly, Ms. Pasquin has waived any claim of error in that ruling. *See American Towers Owners Ass'n. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1185 n. 5 (Utah 1996) ("Issues not briefed by an appellant are deemed waived and abandoned.") However, this holding is not dispositive of Ms. Pasquin's other employment contract claims because Ms. Pasquin was employed by, performed services for, and was compensated by the business. Thus, the issue on remand is: What was the nature and extent of this employment relationship?

(10th Cir.1990); *Doherty v. Doherty Ins. Agency, Inc.*, 878 F.2d 546, 551–52 (1st Cir.1989); *Hejmadi v. AMFAC, Inc.*, 202 Cal.App.3d 525, 249 Cal.Rptr. 5, 14 (1988); *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 715 P.2d 1017, 1018 (Ct.App.1986); *see generally* 4 Caroline N. Brown, *Corbin on Contracts* § 19.3, at 589 (1997); Gina M. Chang, Note, *McInerney v. Charter Golf, Inc.: The Court Swings and Misses*, 29 Loy. U. Chi. L.J. 907 (1998); Lucy Haroutunian, Comment, *Employee, You Have a Job for Life: But Is This Oral Promise Enforceable Under the Statute of Frauds?*, 50 Baylor L.Rev. 493 (1998); 72 Am.Jur.2d *Statute of Frauds* § 34 (1974); Robert A. Brazener, Annotation, *Comment Note.—Validity and Duration of Contract Purporting to Be for Permanent Employment*, 60 A.L.R.3d 226, at § 16 (1974). *But see, e.g., Crenshaw v. General Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir.1991); *Quinn v. Workforce 2000, Inc.*, 887 F.Supp. 131, 136 (E.D.Tex.1995).

## B. Oral Partnership Agreement

¶ 22 Ms. Pasquin argues she and Kory Pasquin agreed to be partners in the business. The record reflects that the alleged partnership was of indefinite duration. Similar to employment contracts of unspecified (or "lifetime") duration, partnership agreements of an indefinite term are terminable at will by any party to the agreement. *See* Utah Code Ann. § 48–1–28(1)(b) (1998). Accordingly, under the same rationale discussed above regarding lifetime employment contracts, most courts agree that enforcement of oral partnership agreements is not barred by the statute of frauds. *See, e.g., Abbott v. Hurst,* 643 So.2d 589, 593 (Ala. 1994); *Cooper v. Saunders–Hunt,* 365 A.2d 626, 629 (D.C.1976); *Prince v. O'Brien,* 234 A.D.2d 12, 650 N.Y.S.2d 157, 158 (1996); *see also* 72 Am.Jur.2d *Statute of Frauds* § 31 (1974). *But see Dwight v. Tobin,* 947 F.2d 455, 459 (11th Cir.1991); *Burkle v. Superflow Mfg. Co.,* 137 Conn. 488, 78 A.2d 698, 701 (1950).

¶ 23 Utah appellate courts have not yet addressed this precise issue, but we have previously held that an oral joint venture agreement to share in the profits of a real estate contract was not barred by the statute of frauds. *See Shire Dev. v. Frontier Invs.,* 799 P.2d 221, 224 (Utah Ct.App.1990). Although we based our holding in *Shire* on the fact that the contract was not one for the sale of an interest in land, and did not explicitly address the one-year clause, the result in *Shire* nonetheless supports the result we reach here. *See id.* at 223–24.

¶ 24 In sum, we reverse the trial court's ruling on the statute of frauds issues. We hold, as a matter of law, that Ms. Pasquin's lifetime employment and partnership claims are not barred by the statute of frauds. Further, Ms. Pasquin waived any challenge to the court's ruling that no reasonable jury could find the existence of an implied-in-fact employment agreement. We remand for further proceedings consistent with this opinion. In addition, on remand the trial court should consider all Ms. Pasquin's remaining contract and tort claims.[8]

## CONCLUSION

¶ 25 We lack jurisdiction over the Estate because Ms. Pasquin's notice of appeal was untimely. Additionally, the trial court erred as a matter of law when it ruled that Ms. Pasquin's lifetime employment and partnership claims were barred by the one-year clause of the statute of frauds. We thus remand these issues to the trial court for proceedings consistent with this opinion. We also remand Ms. Pasquin's other contract and tort claims for further proceedings.

¶ 26 Finally, we have disregarded Ms. Pasquin's reply brief and a portion of the Estate's brief for failure to comply with Utah Rule of Appellate Procedure 24(a)(9). For the same reason, we decline to consider Ms. Pasquin's claim against the Duffins for breach of fiduciary duty and presume the correctness of the trial court's ruling on this issue.

¶ 27 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

---

8. Although the orders granting summary judgment purported to dismiss all Ms. Pasquin's claims, they did so with reference to the statute of frauds and implied-in-fact employment contract only. As a result, Ms. Pasquin's other claims were never adjudicated.