2005 UT App 430

David L. ORLOB, Plaintiff, Appellee, and Cross-appellant,

v.

WASATCH MEDICAL MANAGEMENT, Kenneth C. Jensen, Earlene B. Jensen, Steven K. Jensen, and Kevin J. Jensen, Defendants, Appellants, and Cross-appellees.

No. 20040216–CA.

Court of Appeals of Utah.

Oct. 14, 2005.

James C. Haskins and Thomas N. Thompson, Haskins & Associates, Salt Lake City, and Dan Durrant, Phoenix, Arizona, for Appellants.

David W. Scofield, Peters Scofield Price, Salt Lake City, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and WILKINS, Associate C.J.[1]

## · OPINION

WILKINS, Associate Chief Justice:

¶ 1 For the second time in four years, we are called upon by Wasatch Medical Management (Wasatch) and David Orlob to resolve a now-fourteen-year-old dispute over their Combined Agreement for the sale of Orlob's medical billing service to Wasatch (Combined Agreement or Agreement). In the present action, Wasatch appeals and Orlob cross-appeals from a district court ruling, which held that (1) Orlob is entitled to one-half of the commission payments payable under the Agreement; (2) with the exception of Dr. Hamilton, Orlob fulfilled his obligation under the Agreement to deliver doctors to Wasatch at the billing rate of six percent of collections; (3) Orlob's breaches of the Agreement are not sufficiently serious to remove Wasatch's obligation to make commission payments to Orlob; (4) the parties' oral modification of the Agreement is barred by the statute of frauds; and (5) Orlob is entitled to prejudgment interest on unpaid commissions. We affirm.

---

1. The Honorable Michael J. Wilkins, Associate Chief Justice of the Utah Supreme Court, sat by special assignment pursuant to Utah Code Ann. § 78–7–9.5 (2002) and Utah Code Jud. Admin. R3–108(3).

## BACKGROUND

¶ 2 In 1978, Orlob started a company called Professional's Control Group, which he later consolidated into Professional's Control Group, Inc., a Utah corporation (PCG). PCG provided a billing service for anesthesiologists in the Salt Lake Valley, and Orlob charged his clients at the rate of six percent of the amounts he collected. Wasatch, which is a partnership consisting of Kenneth Jensen, Earlene Jensen, Steven Jensen, and Kevin Jensen (the Jensens), operated a similar service primarily in the Ogden area. In 1987 and the first part of 1988, the Jensens attempted to enter the Salt Lake Valley market, offering services similar to Orlob but charging only a four percent commission on collections. Eventually, some physicians began to leave PCG and go to Wasatch.

¶ 3 As a result, Orlob approached the Jensens about selling his business, and in August 1988, the parties entered into their Combined Agreement. Under the Agreement, the Jensens agreed to purchase PCG's assets, but refused to purchase PCG's stock to avoid assuming that company's liabilities. In addition, Orlob was to receive a monthly commission of $7500 from October 1988 to July 1994. In exchange, Orlob was required to assist in maintaining and transferring PCG's accounts and to covenant not to compete with the Jensens in the medical billing services business for ten years.

¶ 4 When Orlob began transferring PCG's clients to Wasatch, the Jensens requested that he introduce them to the physicians as the owners of Wasatch. However, because the Jensens had previously offered services to some of the physicians at a rate of four percent, Orlob refused to introduce the Jensens as the owners, fearing that the physicians currently paying six percent would be unwilling to continue in their contracts. Nevertheless, the Jensens introduced themselves as the owners of the company to at least one physician, which subsequently caused other Salt Lake area physicians to threaten to terminate their contracts. As a consequence, the Jensens renegotiated those contracts to a billing rate of five percent. The Jensens allege that they orally agreed with Orlob to pay him a reduced commission as a result of the decreased billing rate.

¶ 5 Furthermore, the conduct of the parties with respect to two physicians in particular is important to the contractual dispute before us now. First, one physician, Dr. Hamilton, had sent a letter to Orlob just weeks before Orlob and the Jensens entered into their Agreement, seeking to terminate his contract with PCG. However, after taking over the company, the Jensens managed to renegotiate his contract to a five percent rate and keep him as a client.

¶ 6 Second, another physician, Dr. Peterson, canceled his contract with the Jensens in order to have his billing performed by Tracy Karstone. Orlob assisted Karstone in her billing service by providing her with equipment, office space, and consulting in conjunction with her work for Dr. Peterson. Consequently, the Jensens deducted the amount of commission lost by Dr. Peterson's departure from Orlob's monthly salary, claiming that Orlob's assistance of Karstone was a violation of his non-compete agreement with the Jensens.

¶ 7 Shortly after Orlob and the Jensens signed the Agreement, PCG ceased its business operations and was involuntarily dissolved by the State of Utah for failing to file an annual report. Later the next year, in 1989, Orlob moved to California.

¶ 8 In 1990, the United States Internal Revenue Service (IRS) served a notice of levy on the Jensens for unpaid taxes owed by PCG. It seized payments from PCG's former clients that were then due to Wasatch under the Combined Agreement, and it also seized PCG's interest in the Combined Agreement, including commission payments owed to Orlob. The IRS then sold PCG's "right, title, and interest" in the Combined Agreement to Wasatch at a public sale. However, there was no levy against Orlob personally, nor was his personal interest in the Combined Agreement sold at the public sale. Nevertheless, the Jensens thereafter ceased making commission payments to Orlob.

¶ 9 In 1991, Orlob filed a complaint in Third District Court against the Jensens, seeking damages for unpaid commission pay-

ments. The Jensens moved for summary judgment, arguing that Orlob had no interest in the Combined Agreement, since they had purchased PCG's interest in the Agreement at the IRS auction. Also, in 1992, while the case was pending before the district court, Orlob filed for bankruptcy in California. However, in his bankruptcy schedules he failed to include his lawsuit against the Jensens as required under bankruptcy law.

¶ 10 In 2000, the district court reached a decision in favor of the Jensens, concluding that the Combined Agreement referred to Orlob only in his professional capacity, and therefore, he did not have a personal interest in the Agreement separate from PCG's interest. Orlob appealed to this court in November 2000. *See Orlob v. Wasatch Mgmt.*, 2001 UT App 287, 33 P.3d 1078.

¶ 11 In *Orlob v. Wasatch Management*, we held that Orlob was a party to the Combined Agreement separate from PCG, and that, because of his covenants, he had an individual interest in the Agreement. *See id.* at ¶ 20. Consequently, we reversed the district court's decision granting the Jensen's Motion for Summary Judgment and remanded for further proceedings. *See id.* at ¶ 21. On remand, the district court found that Orlob's interest in the Combined Agreement was equal to PCG's interest and therefore awarded Orlob half of the commission payments due under the Agreement.

¶ 12 The case before us now is an appeal from several of the district court's rulings on remand. Specifically, the Jensens advance six challenges to the district court's decision, arguing that: (1) Orlob did not have standing to pursue an action against the Jensens because he failed to list the action on his bankruptcy schedules; (2) the statute of frauds does not bar the parties' oral modification of the Combined Agreement that reduced Orlob's commission; (3) Orlob's breaches of the Agreement with respect to Drs. Hamilton and Peterson absolve the Jensens of their obligation to perform under the contract; (4) the six percent billing rate at which Orlob warrantied to deliver doctors to Wasatch was intended to last for the life of the Agreement; (5) the district court's factual finding, which divided Orlob and PCG's interest in the Com-

bined Agreement evenly, is clearly erroneous; and (6) the district court erred in awarding Orlob prejudgment interest.

¶ 13 As cross-appellant, Orlob also challenges the district court's factual finding that evenly divided interest in commission payments between him and PCG. Each of these issues will be discussed in turn.

## ANALYSIS

### I. Standing

¶ 14 The first issue we address in this appeal is the Jensens' contention that Orlob lost standing to continue pursuing this action in district court when he filed for bankruptcy in California. Specifically, the Jensens argue that when Orlob failed to list his action seeking commission payments under the Combined Agreement on his bankruptcy schedules, he forfeited his claim for those payments to the bankruptcy estate and is, therefore, precluded from pursuing those payments in district court.

¶ 15 This argument misapprehends the nature of standing. To have standing to sue, "a party must allege that he or she has suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury." *Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 9, 86 P.3d 735. Under this definition, Orlob clearly had standing to sue in 1991 when he first filed his complaint in district court, seeking recovery of commission payments withheld by the Jensens. That Orlob filed for bankruptcy over one and a half years later did not remove the injury nor its redressability. In fact, the Jensens' only allegation is that entitlement to seek redress for the injury was transferred to the bankruptcy estate.

¶ 16 However, the alleged transfer of Orlob's interest in the outcome of his case to the bankruptcy estate did not deprive him of the ability to continue pursuing his action in district court because standing to sue exists independent of a plaintiff's bankruptcy filings. *See, e.g., Pershing Park Villas Homeowners Ass'n. v. United Pac. Ins. Co.*, 219 F.3d 895, 901 (9th Cir.2000) ("[T]he ele-

ments of constitutional standing are present notwithstanding the possibility that the [plaintiffs'] claims against [the defendant] may remain property of their [the plaintiffs'] bankruptcy estates."). Rather than a question of standing, the Jensens' challenge, as Orlob suggests, is actually a question of who is the real party in interest.

¶ 17 The real party in interest is the "person entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefits from the action's final outcome." Black's Law Dictionary 1145 (7th ed.1999); *see* Utah R. Civ. P. 17(a). Since the thrust of the Jensens' argument is that the bankruptcy estate, not Orlob, is entitled to sue, the argument clearly fits within real-party-in-interest parameters. However, unlike standing, a party can waive the real party in interest defense. *Smith v. Royer*, 26 Utah 2d 83, 485 P.2d 664, 666–67 (1971); *see also Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1236 (10th Cir.1990) ("[F]ailure to timely raise a real-party-in-interest defense operates as a waiver.").

¶ 18 Pursuant to rule 12(h) of the Utah Rules of Civil Procedure, a party waives all defenses, with a few exceptions not applicable to this case, when it fails to raise them "either by motion or by answer or reply." Utah R. Civ. P. 12(h); *see also Lewis v. Porter*, 556 P.2d 496 (Utah 1976) (holding that defense was waived when raised for the first time on appeal); *Smith*, 485 P.2d at 667 (holding real-party-in-interest defense waived when not raised at trial). In this case, the Jensens failed to raise the real-party-in-interest defense at all. Rather, they conflated it with a standing challenge, which they did not raise until after the trial had concluded. Therefore, we conclude that any challenge to Orlob's status as the real party in interest has been waived.

## II. Factual Findings of the District Court

¶ 19 The second issue we address on appeal is whether the district court's finding of fact dividing interest in the Combined Agreement evenly between Orlob and PCG was clearly erroneous. In order to challenge a district court's finding of fact, "'an appel-lant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below.'" *Parduhn v. Bennett*, 2005 UT 22, ¶ 25, 112 P.3d 495 (quoting *Chen v. Stewart*, 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation omitted)). Marshaling the evidence is not simply re-arguing the case, or reviewing the evidence at trial. *Id.* Instead, the parties must "provide a precisely focused summary of all the evidence supporting the findings they challenge." *Id.* at ¶ 30 (citing *Chen*, 2004 UT 82 at ¶ 77, 100 P.3d 1177). The parties must then convince the appellate court that the district court erred in its assessment of that evidence. *See id.*

¶ 20 If an appellant contends, as the Jensens and Orlob both do, that the district court has no evidence to support its factual finding, then the appellee must present only a "scintilla" of evidence that would support the finding the district court made in order to show that the appellant did not meet his burden of marshaling the evidence. *Id.* at ¶ 25. However, if absolutely no evidence exists in the record to support a district court's finding, that finding is clearly erroneous. *See Larson v. Larson*, 888 P.2d 719, 724–25 (Utah Ct.App.1994).

¶ 21 The district court in this case entered a finding of fact that Orlob was entitled to fifty percent of the interest in the contract and that PCG was entitled to the remaining interest. Both Orlob and the Jensens claim that there was no evidence to support the district court's finding. However, neither party has met its burden of effectively marshaling the evidence. Both parties presented evidence at trial that would support the district court's finding of fact. Orlob presented evidence that he was entitled to all interest in the Combined Agreement, and the Jensens offered evidence that Orlob was not entitled to any interest in the Combined Agreement. Neither party offered evidence on how the interest in the Combined Agreement was to be divided in the instance that Orlob and PCG were to share the interest in the agreement. Through the presen-

tation of evidence supporting the parties' disparate contentions, the record clearly contained enough evidence to support the district court's finding of fact. Since the parties failed to properly marshal the evidence, we conclude that the district court's finding on the amount of Orlob's personal interest in the Combined Agreement is not clearly erroneous.

### III. Statute of Frauds

¶ 22 The third issue before us is whether an oral agreement between the parties reducing Orlob's commission should be enforced. The district court held that the oral modification was barred by the statute of frauds. The application of that statute is a question of law that we review for correctness. *See Spears v. Warr,* 2002 UT 24,¶ 23; 44 P.3d 742. The statute of frauds, embodied in Utah Code section 25–5–4(1), requires that "every agreement that by its terms is not to be performed within one year from the making of the agreement" be in writing. Utah Code Ann. § 25–5–4(1) (1998 & Supp. 2004).

¶ 23 The Jensens contend that the oral modification reducing Orlob's commission should be enforced because it is capable of being performed within one year. They rely on *Pasquin v. Pasquin,* 1999 UT App 245, 988 P.2d 1, to support their argument. In *Pasquin,* we held that the enforcement of a lifetime employment agreement was not barred by the statute of frauds because it could be fully performed within a year, either by death or voluntary discontinuance. *See id.* at ¶ 19.

¶ 24 However, unlike the agreement in *Pasquin,* the Combined Agreement between Orlob and the Jensens was not an agreement for lifetime employment. Instead, the terms bind both parties to a six-year commission period and a ten-year period of non-competition. Neither term is capable of performance within one year. If Orlob were to die, unlike the result in a lifetime employment contract, where the end of the life is the end of the contract, the contract would be discharged and not performed. Also, unlike *Pasquin,* if either party voluntarily discontin-

ued the contract, that party would be in breach of contract.

¶ 25 Nevertheless, the Jensens further contend that, because the contracts between the physicians and the company could be terminated in less than one year, the oral modifications altering the commissions paid to Orlob under the Combined Agreement could also be performed within one year. They rely on *Zion's Serv. Corp. v. Danielson,* 12 Utah 2d 369, 366 P.2d 982 (1961), for this proposition. In *Zion's,* the court determined that an at-will contract was capable of being performed within one year. *See id.* at 985. However, *Zion's* is distinguishable from the facts of this case. Although the contract between the physicians and the company may be terminated within a year, the Combined Agreement has definite terms and a duration of more than a year. The fact that the physicians were able to terminate their contracts with the company within a year is unrelated to the terms of the Combined Agreement because the Combined Agreement was an agreement between the Jensens and Orlob, separate and distinct from the contracts between the company and the physicians. Accordingly, we affirm the district court's ruling excluding the oral modifications to Orlob's commission.

### IV. Orlob's Breaches

¶ 26 The fourth issue we address on appeal is whether Orlob's breaches of the Combined Agreement relieve the Jensens of their obligation to perform under the contract. It is well-settled law that one party's breach excuses further performance by the non-breaching party if the breach is material. *See Coalville City v. Lundgren,* 930 P.2d 1206, 1209 (Utah Ct.App.1997). Whether a breach of a contract constitutes a material breach is a question of fact, *see id.* at 1209, which we review under a clearly erroneous standard. *See State v. Green,* 2005 UT 9,¶ 25, 108 P.3d 710. As we stated above, to challenge a district court's finding of fact, "an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below."

*Parduhn v. Bennett,* 2005 UT 22,¶ 25, 112 P.3d 495 (quoting *Chen v. Stewart,* 2004 UT 82,¶ 76, 100 P.3d 1177 (internal citation omitted)).

¶ 27 The Jensens challenge the district court's conclusion that Orlob's failure to introduce them to physicians in Payson "is not sufficient to vitiate the obligation to make commission payments under the Combined Agreement," and that there was inadequate evidence to establish any economic injury as a result of that breach. However, the Jensens have not met their burden of marshaling evidence; they have merely reargued the merits of their case, without demonstrating the legal insufficiency of the evidence upon which the district court based its decision. We have held that this approach is insufficient. *See id.*

¶ 28 The Jensens also challenge the district court's conclusion that deductions from Orlob's commission is an adequate remedy for Orlob's breach of the Combined Agreement with respect to Drs. Hamilton and Peterson. However, we have held that "the equitable remedy of rescission is inappropriate when a legal remedy such as damages is adequate." *Coalville City,* 930 P.2d at 1210. In this case, the Jensens elected to reduce Orlob's commission because Orlob breached the non-compete provisions of the Combined Agreement by assisting an individual in providing services to Dr. Peterson. When Dr. Peterson departed from the Jensens' billing services, the Jensens sent Orlob a letter announcing his reduced commission and commenced to reserve from Orlob's commission the net profits they would have received had Dr. Peterson not left. By initiating this legal remedy for Orlob's breach, the Jensens are precluded from withholding their performance under the Agreement.

¶ 29 In addition to the breach involving Dr. Peterson, Orlob breached the agreement by not transferring Dr. Hamilton's account as promised in the Combined Agreement. However, the Jensens did not elect a remedy for the breach involving Dr. Hamilton, and they contend that even though they chose to reduce Orlob's commission in respect to Dr. Peterson, the court cannot "impose" the same remedy on them to rectify Orlob's breach respecting Dr. Hamilton. We reject this argument.

¶ 30 The Combined Agreement contained a provision for damages in anticipation of a breach and provided that, "[i]n the event of default . . . the non-defaulting party is entitled to money damages only." Although the contract term did not specify reduced commissions as the appropriate monetary remedy, the Jensens elected that remedy in regards to Dr. Peterson, and the court thereafter applied that remedy to Orlob's other breach involving Dr. Hamilton.

¶ 31 In accord with the general rule of damages, the district court has discretion to place the parties in the position they would have been in if the contract had not been breached. *See Bevan v. J.H. Constr. Co.,* 669 P.2d 442, 444 (Utah 1983). By reducing Orlob's commission by an amount corresponding to the breach, the Jensens were placed in the same position they would have been in had the contract not been breached. Since a reduced commission was elected by the Jensens when they sent a letter to Orlob reducing his commission, the court was within its discretion to apply the same remedy to the other breaches of the contract and to give the Jensens the benefit of their bargain.

## V. Interpretation of Warranty Provision

¶ 32 The next issue we review on appeal is whether the district court correctly interpreted the provision of the Combined Agreement which states that "Orlob warrants that all listed . . . anesthesiologists [sic] accounts must be willing to pay 6% of total collections for services rendered." The district court held that this provision meant that Orlob was obligated only to deliver the accounts to the Jensens at six percent interest and not to maintain the accounts at six percent for the lifetime of the agreement.

> When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions

from the plain meaning of the contractual language as a matter of law.

*Bakowski v. Mountain States Steel, Inc.,* 2002 UT 62,¶ 16, 52 P.3d 1179 (citation omitted). "If a trial court interprets a contract as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard." *Peterson v. Sunrider Corp.,* 2002 UT 43,¶ 14, 48 P.3d 918 (quoting *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985)).

¶ 33 In this case, the district court interpreted the warranty provision of the Combined Agreement based on its plain meaning. It reasoned that the billing services market had been stable at six percent commission for PCG until the Jensens entered the market. Since the Jensens had previously offered a lower interest rate to the physicians and then requested to be introduced as the owners of the company charging a higher interest rate, the district court concluded that it would be "painfully naive to assume that those doctors are going to accept a six percent contract from the same people that offered them four percent." Based on this conclusion, the district court rejected the Jensens' argument that the warranty to deliver the physicians' accounts at six percent was intended to last for the lifetime of the Agreement, and considered it to be not credible. We agree.

¶ 34 If the parties in this case had intended to extend the warranty to deliver the physicians at six percent commission over the entire length of the Agreement, they should have included language to that effect in the warranty provision. However, they did not do so, and we cannot write such a term into the Agreement for the Jensens. *See Bakowski,* 2002 UT 62 at ¶ 19, 52 P.3d 1179. Rather, we affirm the district court ruling, which held that Orlob's personal warranty to deliver the accounts at six percent was a warranty that ended as soon as the accounts were delivered.

VI. Prejudgment Interest

¶ 35 The final issue before us is whether the district court correctly awarded prejudgment interest to Orlob. A district court's determination to award prejudgment interest is a question of law that is reviewed for correctness. *See Smith v. Fairfax Realty, Inc.,* 2003 UT 41,¶ 16, 82 P.3d 1064 *cert. denied,* 541 U.S. 960, 124 S.Ct. 1716, 158 L.Ed.2d 401 (2004). Prejudgment interest is properly awarded "when the damage is complete, the loss can be measured by facts and figures, and the amount of loss is fixed as of a particular time. [A] court may only award prejudgment interest if damages are calculable within a mathematical certainty." *Harris v. IES Assocs., Inc.,* 2003 UT App 112,-¶ 52, 69 P.3d 297 (quoting *Lefavi v. Bertoch,* 2000 UT App 5,¶ 24, 994 P.2d 817 (alteration in original)).

¶ 36 In this case, the district court held that "after calculating all reductions, offsets and credits for expenses ... the total and precise amount ow[ed] each month on each commission payment is readily ascertainable as a mathematical proposition." We agree, and as such, we conclude that prejudgment interest was properly awarded by the district court.

¶ 37 The Jensens object to the district court's holding on two grounds. First, they claim that, since they were entitled to offsets for Orlob's breaches of the Combined Agreement and the extent of those breaches was not known until the district court ruled, the ultimate amount of damages owed was "not clearly ascertainable with mathematical certainty." Without any more certainty in the amount of damages, the Jensens argue, prejudgment interest is inappropriate. However, we have upheld prejudgment interest rulings under similar circumstances. In *Harris,* we concluded that when a party has "a potential right to offsetting damages based on its counterclaim for breach of contract, [that claim] does not preclude an award of prejudgment interest." 2003 UT App 112 at ¶ 53, 69 P.3d 297. All that is required is that the offsets be deducted before the interest is calculated. *See id.*

¶ 38 Secondly, the Jensens contend that prejudgment interest is inappropriate because they had no notice of a deficiency in payments owing to Orlob. They claim that Orlob never made a demand for payments and, until we held in our previous case that

Orlob retained an interest in the Combined Agreement, they were not aware that they owed him anything. However, this argument fails to recognize the plain terms of the Combined Agreement under which the Jensens were obligated to make payments to Orlob. Clearly the Jensens had "notice" of this contractual obligation from the time they signed the Agreement, since they made several payments in accordance therewith. Indeed, the central focus of Orlob's action, from the beginning, has been to recover commission payments withheld by the Jensens. As such, we conclude that the Jensens were fully aware that their payments to Orlob were deficient, and because the deficiency can be clearly ascertained with mathematical certainty, prejudgment interest is appropriate.

## CONCLUSION

¶ 39 We affirm the district court's rulings and hold that (1) Orlob had standing to pursue this action; (2) interest in the Combined Agreement is to be shared equally between Orlob and PCG; (3) the oral modification to the Combined Agreement is barred by the statute of frauds; (4) Orlob's breaches of the Combined Agreement are not material, and the Jensens are consequently obligated to perform under the Agreement; (5) Orlob's warranty to deliver the physician's accounts at six percent commission does not extend for the life of the agreement; and (6) Orlob is entitled to prejudgment interest.

¶ 40 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.