2007 UT App 100

**RON CASE ROOFING & ASPHALT PAVING, L.L.C., a Utah limited liability company, Plaintiff and Appellant,**

**v.**

**Peggy Ann STURZENEGGER aka Peggy Ann Johnson Sturzenegger, an individual; Clarence Gene Sturzenegger, an individual; and John Does 1–10, Defendants and Appellees.**

No. 20060080–CA.

Court of Appeals of Utah.

March 22, 2007.

---

Adam T. Mow and Jason H. Robinson, Babcock Scott & Babcock, Salt Lake City, for Appellant.

Tyler B. Ayres, Ayres Law Firm, Salt Lake City, for Appellees.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff Ron Case Roofing & Asphalt Paving, L.L.C. (Case) appeals the judgment entered below, arguing that the trial court erred in several respects, including failing to award contractual interest, forbidding foreclosure as a means to satisfy its judgment secured by a mechanics' lien, and awarding offsets and a price reduction that were not based on the evidence. Case also requests additional attorney fees below as well as attorney fees on appeal. We reverse and remand.

## BACKGROUND

¶ 2 On April 14, 2003, Peggy Ann Sturzenegger entered into a contract with Case for roofing work on a house she and her husband owned. About one week later, Case began work on the house, and shortly thereafter Sturzenegger left town, leaving behind no contact information. After tearing off the old roofing, Case employees discovered that there was more than one roofing system that needed to be removed prior to installation of the new roof. They also discovered that the roof deck was in poor condition and would require new sheeting prior to installation of the new roof. Pursuant to a contract clause specifically addressing how work is to progress when the customer is unable to be contacted, Case continued the project in Sturzenegger's absence, removing the additional roofing systems and installing the new sheeting.

¶ 3 During the roof installation, Case discovered that the master bedroom had an exposed vaulted tongue-and-groove ceiling. This discovery was not, however, made early enough to avoid damaging the ceiling. The nails used to install the new sheeting pierced

the ceiling and were visible from within the house. After Sturzenegger returned, Case expressed its willingness to repair the ceiling and estimated that its cost for this repair would be $1500. Sturzenegger did not allow Case to complete the repair or the associated clean-up work, but instead hired another company, to which she paid $3000 to do the work.

¶ 4 The billing statement Case gave to Sturzenegger reflected a balance of $16,578, which included the $12,450 for the foreseen work, several thousand dollars more for the required extra work, and a deduction for a $6000 down payment. After nearly two months of non-payment, Case filed a mechanics' lien against the property.

¶ 5 Case subsequently brought suit against the Sturzeneggers. At the conclusion of the bench trial, the trial court entered a judgment of $20,751.65 against the Sturzeneggers. The award included offsets of $2400 for damage to the master bedroom ceiling, and of $1500 for "certain deficiencies with the roof system." Additionally, in calculating the amount due Case, the court required the Sturzeneggers to pay $1.25 per square foot for sheeting, instead of the $1.59 per square foot that the contract provided, the court reasoning that the amount "need[ed] to be moderated because of what I've said, in terms of the, what I think was the lack of reasonable approach by the contractor under these circumstances." A portion of Case's attorney fees were also included in the award because the court determined that Case was the prevailing party "on the basic claim." The court ordered that the award would accrue postjudgment interest at the statutory rate of 4.82% per annum, as opposed to the higher contractual interest rate of 3% per month. Further, although awarding Case a judgment lien against the Sturzenegger property, the trial court ordered that Case "shall not be allowed to execute on its Judgment lien against the Property unless and until such time as the Property is sold or otherwise transferred."

¶ 6 The Sturzeneggers thereafter deposited the full judgment amount with the clerk of the court and conditioned payment to Case upon Case entering a satisfaction of judgment and waiving its right to appeal. Case rejected such a proposal and now appeals several aspects of the trial court's determination below. We address each of these issues in turn.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 7 Case argues that the trial court erred in awarding interest at a rate other than the contractual interest rate, and in limiting Case's foreclosure of its mechanics' lien. Case also contests the offsets and price reduction determined by the trial court, arguing that there was not adequate evidence to support them. Each of these issues arises from legal determinations and conclusions of the trial court, and we review such under a correctness standard, granting no deference to the trial court's decision. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. Contractual Interest

■ ¶ 8 The contract between the parties provides: "In the event payments are not timely made, a finance charge of 3% per month will be charged on the unpaid balance from the date of completion to the date of payment before and after judgment." The trial court below refused to award any interest other than postjudgment interest at the statutorily prescribed rate of 4.82% per annum, *see* Utah Code Ann. § 15–1–4(3)(a) (2005). The court reasoned that "it would not be appropriate to assess an interest component in this situation" because the Sturzeneggers should not be required "to pay interest and particularly interest at a fairly high rate for a contract which, the performance of which there may, there may very well be some deficiencies."

■ ¶ 9 The Utah Code provides that "parties to a lawful contract may agree upon any rate of interest," *id.* § 15–1–1(1) (2005), and that "a judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties," *id.* § 15–1–4(2)(a). There is nothing in the trial court's decision that would suggest that the legality of the contract was ever

at issue, and thus, the contractual rate of interest agreed upon by the parties is applicable to the judgment awarded here.[1] As to the deficiencies alluded to by the trial court, these may be remedied by an appropriate offset award, which will indirectly affect the amount of interest, but the court may not seek to redress such wrongs by altering the parties' contractually agreed upon interest terms. *Cf. Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 37, 124 P.3d 269 ("[W]hen a party has a potential right to offsetting damages based on its counterclaim for breach of contract, [that claim] does not preclude an award of prejudgment interest." (alteration in original) (quotations and citation omitted)). We reverse and remand to the trial court to calculate and award the interest previously agreed upon by the parties in accordance with the contract.

¶ 10 The Sturzeneggers argue that because they paid the judgment in full to the court on the very date the judgment was entered, "issues surrounding the denial of postjudgment interest [are] thus moot." But in order for Case to have obtained the money on deposit with the trial court, the Sturzeneggers required Case to relinquish its right to appeal and to enter a satisfaction of judgment. Thus, the Sturzeneggers' payment of the judgment amount to the clerk of the court did not effect payment of the judgment, and no postjudgment interest has been avoided thereby.

## II.   Foreclosure of Mechanics' Lien

¶ 11 The trial court awarded Case a judgment lien on the Sturzeneggers' property but then specifically prohibited Case from foreclosing its lien "unless and until such time as the Property is sold or otherwise transferred." Case argues that it is statutorily entitled to foreclose the lien. We agree.

¶ 12 Prior to trial, Case asserted a mechanics' lien against the Sturzeneggers' property. The Utah Code provides, respecting mechanics' lien foreclosure: "The court *shall* cause the property to be sold in satisfaction

of the liens and costs as in the case of foreclosure of mortgages, subject to the same right of redemption." Utah Code Ann. § 38-1-15 (2005) (emphasis added). Because the statutory language is nondiscretionary, *see Board of Educ. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983) (stating that the word "shall" is "usually presumed mandatory"), and because the trial court relies on no other authority, the court erred by limiting the foreclosure of Case's lien in a manner not permitted by the statute, and we therefore reverse.

## III.   Offsets and Price Reduction Given Below

¶ 13 Case contests the $2400 and $1500 offsets awarded below, and the reduction of the sheeting price to $1.25 per square foot. While there is certainly no dispute regarding the existence of damage to the master bedroom ceiling, and although Case does not dispute with the trial court's finding that there were "deficiencies with the roof system," Case argues that there was nonetheless no evidence to support the amounts awarded as offsets or the reduction in the sheeting price. We agree.

¶ 14 In addition to proving that damages exist, an injured party must also put forth evidence to prove the amount of damages. *See Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). The proof of amount of damages is a less exacting standard because "[i]t is, after all, the wrongdoer, rather than the injured party, who should bear the burden of some uncertainty in the amount of damages." *Id.* Thus, "[t]he amount of damages may be based upon approximations, if the fact of damage is established, and the approximations are based upon reasonable assumptions or projections." *Id.* Nonetheless, "there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Id.*

---

**1.** This case is not, as the Sturzeneggers argue, an action for equitable relief. Rather, this is a breach of contract case, and "[i]n contract cases, ... interest on amounts found to be due in judi-

cial proceedings is recovery to which the creditor is entitled as a matter of law." *Lignell v. Berg*, 593 P.2d 800, 809 (Utah 1979).

¶ 15 Here, there was some evidence presented regarding the dollar amount of the damage to the master bedroom ceiling. Case presented evidence that it estimated the cost of repair to be $1500, and the Sturzeneggers presented evidence that the actual cost of repair was $3000.[2] But the trial court did not rely on such evidence to obtain an appropriate offset amount, and instead, "using 'Kentucky windage' numbers,"[3] awarded a $2400 offset. Likewise, regarding the $1500 offset awarded for roofing deficiencies, the trial court conceded in its findings that "[t]here was no evidence presented at trial as to the dollar value of the deficiencies." Instead, the court again used " 'Kentucky windage' numbers" to obtain the offset amount. Thus, the amounts awarded as offsets are not supported by the evidence, and we reverse these awards with instructions to the trial court to award, based on the evidence presented below, an appropriate offset for the damage to the master bedroom ceiling.

¶ 16 Regarding the reduction in sheeting price from the contractually agreed upon amount, the trial court included no findings as to the reason for the reduction. At the hearing the court reasoned:

The $7,314 for the additional sheeting, being at the "top end of the, of the range of what might be reasonable under these circumstances", I think needs to be moderated because of what I've said, in terms of the, what I think was the lack of reasonable approach by the contractor under these circumstances.

And the Sturzeneggers concede that the trial court made this reduction "not as a determination that this was the cost involved in the sheeting, but rather as a type of penalty for what he believed was unreasonable decision-making by the contractor to undertake such a vast amount of additional work without speaking to the owner." The trial court may not use a general sense that the price was unfair nor evidence of the communication failings of the contractor to justify reducing a price unambiguously agreed upon by contract. *See Kraatz v. Heritage Imps.*, 2003 UT App 201, ¶ 22, 71 P.3d 188 ("In spite of [the plaintiff's] protestations about the unfairness of this arrangement, he nevertheless agreed to it . . . , as evidenced by the unambiguous language of the contract he signed. Thus, we cannot alter the rights agreed to by the parties by appeal to a more general sense of fairness." (quotations and citation omitted)). The price reduction is therefore reversed and we instruct the trial court to award the full contract price for the sheeting provided.

### IV. Attorney Fees

¶ 17 The contract signed by the parties provides: "Customer agrees to pay all cost of collection and attorney's fees after default and referral to attorney and further agrees to pay after judgment cost of collection." The trial court did award attorney fees below, although the court discounted the amount claimed for three reasons:

[F]irst, while [Case] prevailed on the basic claim, there were a number of aspects of [Case's] claim and [the Sturzeneggers'] Counterclaim that were not fully won by [Case]; second, given the amount of the claim and the actual result obtained, the initial attorney's fees claimed appeared to be excessive; and third, some of the time claimed (e.g., for trial preparation and related matters) also appeared to be excessive.

Case does not contest the award of attorney fees, but now argues that because the situation relied upon by the trial court has changed as a result of Case's appeal—i.e., Case is successful on more aspects of its claim—that the fees should be recalculated. We agree and remand to the trial court to recalculate attorney fees based on the level of Case's success resulting from this appeal, while still deducting any portion of fees which was excessive. *Cf. id.* at ¶ 28 ("[T]o interpret the contract so as to allow unreasonable costs and fees would reduce the costs and fees recovery provision to absurdity." (quotations and citation omitted)).

2. The trial court's findings, however, state that "[t]here was no evidence presented at trial that the $3,000.00 paid by . . . Sturzenegger for repair of the master bedroom ceiling was a *reasonable* amount." (Emphasis added.)

3. The term "Kentucky windage" is used to describe an unscientific adjustment, usually based on previous experience, to compensate for a result that varies from the desired mark, usually because of imperfect conditions.

█ ¶ 18 Case also requests its attorney fees on appeal. The Utah Supreme Court has held that "a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract." *Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980). The Sturzeneggers argue that such an award is appropriate only when a *defendant* prevails both below and on appeal. Such an argument is without merit. *See id.* (" 'The purpose of a provision for attorney's fees is to indemnify the creditor or the prevailing party against the necessity of paying an attorney's fee and to enable him to recover the full amount of the obligation.' " (quoting *Zambruk v. Perlmutter 3rd Gen. Builders, Inc.*, 32 Colo.App. 276, 510 P.2d 472, 476 (1973))). Therefore, we remand to the trial court with instructions to calculate and award reasonable attorney fees on appeal.

### CONCLUSION

¶ 19 We reverse the award of statutory interest and remand for the trial court to calculate and award the contractual interest to which Case is entitled, the interest accruing both before and after judgment at the rate specified by contract. We reverse the trial court's preclusion of foreclosure on the mechanics' lien. We also reverse the trial court's offsets and price reduction as they were not based on evidence before the court, and remand with instructions to make the appropriate findings regarding an offset for the master bedroom ceiling damage and to recalculate the award for the cost of sheeting. As a result of Case's status as prevailing party on appeal, we determine that it is entitled to attorney fees on appeal, as well as an upward modification of fees awarded at trial, as explained above. We remand to the trial court to make such calculations and awards.

¶ 20 WE CONCUR: Carolyn B. McHugh and Gregory K. Orme, Judges.