2010 UT App 40

**KNIGHT ADJUSTMENT BUREAU, Plaintiff and Appellant,**

v.

**Christopher LEWIS, Defendant and Appellee.**

No. 20090013–CA.

Court of Appeals of Utah.

Feb. 19, 2010.

---

Craig S. Cook, Salt Lake City; and Jay V. Barney, Sandy, for Appellant.

Before Judges McHUGH, ORME, and VOROS.

MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶1 Knight Adjustment Bureau (Knight) appeals the trial court's imposition of a post-judgment interest rate lower than the contractual rate following entry of a default judgment against Christopher Lewis.[1] We reverse and remand.

¶2 On appeal, Knight claims that the trial court erred in reducing the postjudgment interest rate from 21.17% per annum, the amount Lewis agreed to pay in the retail installment contract and security agreement (the Agreement), to the statutorily prescribed postjudgment interest rate of 10% per annum. Whether the trial court applied the correct interest rate is a question of law, which we review for correctness. *See Ron Case Roofing & Asphalt Paving, LLC v. Sturzenegger*, 2007 UT App 100, ¶7, 158 P.3d 556.

¶3 Under Utah law, "parties to a lawful contract may agree upon any rate of interest for the loan or forbearance of any money, goods, or chose in action that is the subject of their contract." Utah Code Ann. § 15–1–1(1) (2009).[2] When the parties have

---

1. Lewis did not file a brief in this matter and did not otherwise participate on appeal.

2. Because the relevant code sections have not been amended since Lewis entered into the

agreed to a rate of interest, that rate is applicable to a judgment as well. *See id.* § 15-1-4(2)(a) ("[A] judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties . . . ."); *see also id.* § 15-1-1(2) (specifying the legal interest rate as 10% where parties to a contract have *not* specified a different rate).

¶ 4 Pursuant to the Agreement, Lewis agreed to pay 21.17% per annum on his car loan, including during the period after default until paid in full. Thus, the Agreement expressly provides for a postjudgment interest rate of 21.17%. We have previously held that unless the legality of the underlying contract is in dispute, section 15-1-4 prohibits the trial court from altering the interest rate agreed to by the parties to the contract. *See Sturzenegger,* 2007 UT App 100, ¶¶ 5, 9, 158 P.3d 556.

¶ 5 The trial court nevertheless refused to apply the contractual interest rate here, instead imposing the statutory rate of 10%. The trial court explained its decision as follows:

> The Court: [I]t's my practice when I think an interest rate is outrageous to change it to 10 percent. That's what I did in this case.
>
> [Knight's] Counsel: All right. I just wonder, I'm sure the Court was aware that under [Utah Code section] 15-1[-4] if you have an agreed upon interest rate—
>
> The Court: I'm aware of it. . . . I think the people in our community and many others are going under under the weight of interest fees and things like that and I think 21.17 percent is absolutely outrageous. I doubt that most people understand when they sign up what's going to happen to their interest rates. I don't have a legal basis, just an equitable basis.

Although the trial court did not expressly state that the contractual interest rate was unconscionable, we presume for purposes of this decision that unconscionability was the basis for the trial court's refusal to impose the contract rate postjudgment.[3]

¶ 6 In Utah, an agreement that is unconscionable is unenforceable. *See Sosa v. Paulos,* 924 P.2d 357, 359 (Utah 1996); *see also* Utah Code Ann. § 70C-7-106(1) (2009) (permitting a court to refuse to enforce an unconscionable contract in whole or in part by removing the unconscionable clause). We review a determination that a contract is unconscionable for correctness. *See Sosa,* 924 P.2d at 360. In doing so, we note that

> [a] party claiming unconscionability bears a heavy burden . . . because [w]ith a few exceptions, it is still axiomatic in contract law that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts for [the] purpose of relieving one side or the other from the effects of a bad bargain.

*Cantamar, LLC v. Champagne,* 2006 UT App 321, ¶ 31, 142 P.3d 140 (second alteration in original) (citation and internal quotation marks omitted) (rejecting argument that 30% per annum default interest rate agreed to in promissory note was unconscionable).

¶ 7 Unconscionability "include[s] an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sosa,* 924 P.2d at 360 (internal quotation marks omitted). In making an unconscionability determination, Utah courts engage in a two-part analysis to determine whether the contract, or a provision thereof, is void for (1) procedural unconscionability or (2) substantive unconscionability. *See Resource Mgmt. Co. v. Weston Ranch,* 706 P.2d 1028, 1043 (Utah 1985); *see also Ryan v. Dan's Food Stores, Inc.,* 972 P.2d 395, 402 (Utah 1998). Procedural unconscionability is dependent on the facts concerning how the contract was formed, including the parties' relative bargaining power,

Agreement, we cite to the current version of the Utah Code as a convenience to the reader.

**3.** The trial court raised the issue of whether the contractual interest rate was enforceable sua sponte. Despite its conclusion that 21.17% per annum was "absolutely outrageous" as a postjudgment interest rate, the trial court did not alter the prejudgment interest rate, which was also 21.17% per annum.

sophistication, and ability to negotiate.[4] *See Champagne*, 2006 UT App 321, ¶ 35, 142 P.3d 140. In contrast, substantive unconscionability focuses on the terms of the agreement, "examining the 'relative fairness of the obligations assumed.'" *Sosa*, 924 P.2d at 361 (quoting *Resource Mgmt.*, 706 P.2d at 1041). In reviewing the substantive fairness of an agreement, its terms "should be considered 'according to the mores and business practices of the time and place.'" *Id.* (quoting *Resource Mgmt.*, 706 P.2d at 1041); *see also Champagne*, 2006 UT App 321, ¶ 34, 142 P.3d 140 (considering the standard in the industry, risks involved in the transaction, and the experience of the parties in upholding a 30% per annum default interest rate on a promissory note).[5]

¶ 8 The Utah Legislature has mandated that the trial court consider the relevant facts before holding that a contractual provision in a consumer credit contract is unenforceable due to unconscionability.

> If it is claimed or appears to a court that a consumer credit agreement or any part of it may be unconscionable, the parties *shall* be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination.

Utah Code Ann. § 70C–7–106(2) (emphasis added). Here, the trial court did not hold such a hearing and did not enter any findings of fact or conclusions of law on the issue of unconscionability.

¶ 9 In the absence of an unlawful contract, a threshold that was not established here, the trial court was required to enter a judgment which "conform[ed] to the contract." Utah Code Ann. § 15–1–4(2)(a) (2009). Consequently, the trial court erred by setting aside the contractual postjudgment interest rate. We therefore reverse and remand for entry of an order imposing a postjudgment interest rate of 21.17% per annum.

¶ 10 Reversed.

¶ 11 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.

---

4. "[P]rocedural unconscionability alone[, however,] 'rarely render[s] a contract unconscionable.'" *Cantamar, LLC v. Champagne*, 2006 UT App 321, ¶ 32, 142 P.3d 140 (third alteration in original) (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998)).

5. The trial court's comment that postjudgment interest of 21.17% per annum is "absolutely outrageous" seems to be a conclusion that the interest rate is substantively unconscionable, while its comment that "I doubt people understand … what's going to happen to their interest rates" may be a reference to procedural unconscionability.