**2025 UT App 103**

## THE UTAH COURT OF APPEALS

CAPITAL STACK UT LLC,
Appellee,
*v.*
GOWTHAM REDDY; GENESIS CAPITAL INVESTMENTS, LLC;
JGA DEVELOPMENT, LLC; GENESIS OPPORTUNITY ZONE FUND;
SHIVA HOLDINGS, LLC; AND PROJECT 557 FIRST ST DEVELOPMENT,
Appellants.

Opinion
No. 20240538-CA
Filed July 10, 2025

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 230905758

Kennedy D. Nate and Austin C. Nate,
Attorneys for Appellants

Erik A. Christiansen, Alan S. Mouritsen, and
Alex N. Vandiver, Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

OLIVER, Judge:

¶1     Gowtham Reddy entered into a loan agreement with Capital Stack UT LLC (Capital Stack) on behalf of his companies Genesis Capital Investments, LLC; JGA Development, LLC; Genesis Opportunity Zone Fund; Shiva Holdings, LLC; and Project 557 First St Development (collectively, Reddy). When Reddy defaulted, Capital Stack filed a confession of judgment in district court and obtained a judgment against Reddy. Reddy then filed a motion under rule 60(b) of the Utah Rules of Civil Procedure to set aside the judgment. The district court denied the motion, and Reddy now appeals. We affirm.

BACKGROUND

*Reddy Signs the Loan Agreement and Defaults*

¶2 Reddy acquired numerous investment properties, many of which were "not tenanted and required significant renovations to make them revenue producing." Due to the status of these properties, traditional bank funding was not available, and Reddy had to seek loans from other sources.

¶3 On February 17, 2022, Reddy signed a loan agreement with Capital Stack (the Loan Agreement). Reddy signed the Loan Agreement as the "Borrower" and "Guarantor," with Capital Stack defined as the "Lender." He borrowed $750,000, which he agreed to pay back over seven months at an annual interest rate of 146.44%. Including interest and fees, Reddy agreed to repay a total of $1,050,000. Section 40 of the Loan Agreement stated, in part, that the Loan Agreement "is made in Utah (that is, no binding contract will be formed until Lender receives and accepts Borrower's signed Agreement in Utah)." Additionally, the signature page had a separate signature line below the statement "For Lender's Use Only: This [Loan] Agreement has been received and accepted by Lender in Utah after being signed by Borrower and any Guarantor(s)." That signature line remained blank.

¶4 Reddy also signed a stipulated confession of judgment (the Confession of Judgment) pursuant to section 51 of the Loan Agreement. That section provided that if Reddy defaulted on the Loan Agreement, the Confession of Judgment would be filed in Utah's Third District Court in the amount of $1,050,000 "amended by any payments made." In the Confession of Judgment, Reddy acknowledged that it "may be entered against [him] without further notice."

¶5 In February 2023, Capital Stack's loan servicer (Servicer) contacted Reddy via email regarding missed payments. In response, Reddy informed Servicer in an email, "[I]t is not that we

don't want to pay, but that we can't with the market squeeze going on as it is." In March 2023, Servicer informed Reddy that his "lack of repayment . . . placed [his] account at risk of escalation for breach of contract." Reddy did not respond.

¶6 On August 7, 2023, Capital Stack filed the Confession of Judgment with the district court, without notice to Reddy. The district court entered a final judgment against Reddy for $694,999.90 (accounting for payments made) on August 16, 2023.

*The Rule 60(b) Motion*

¶7 On December 20, 2023, Reddy filed a motion pursuant to rule 60(b) of the Utah Rules of Civil Procedure to set aside the judgment. Reddy argued that the judgment should be set aside because (1) the annual interest rate of 146.44% was substantively unconscionable on its face, (2) the Loan Agreement was procedurally unconscionable because Capital Stack "chose Utah as the venue to avoid the usury laws in either New York or New Jersey that likely would have barred the unconscionable rate included in the loan," and (3) there was "no evidence that the Loan Agreement was 'signed in Utah' as required by the express terms of the Loan Agreement."

¶8 Capital Stack responded that Reddy "mooted and waived any argument that the terms of the [Loan] Agreement are unconscionable" when he signed the Confession of Judgment. It then argued that the Loan Agreement was fully executed but, even if it was not, it would be enforceable under theories of equitable estoppel or unjust enrichment.

¶9 After holding a hearing, the district court denied Reddy's motion. The court found that Reddy signed the Loan Agreement, which "has all the details very, very carefully and clearly spelled out." The court found that the Loan Agreement was accepted and received in Utah and that the signature block at issue "was only for Lender's purposes." The court stated that because Capital

Stack fully performed, it could not find that there was no binding agreement "given the course of conduct between the parties" and "the signed signature page from" Reddy. The court also declined to conclude that the interest rate was unconscionable based on Utah caselaw. The court found that the parties were all sophisticated and that the Loan Agreement appeared "to fall squarely in the norm."

ISSUE AND STANDARD OF REVIEW

¶10    Reddy challenges the district court's denial of his rule 60(b) motion. "We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion." *Lewis v. U.S. Bank Trust, NA*, 2024 UT App 3, ¶ 16, 542 P.3d 988 (cleaned up).

ANALYSIS

I. The Rule 60(b) Motion

¶11    "Rule 60(b) is an equitable rule designed to balance the competing interests of finality and fairness," and in "balancing these competing interests, the district court must consider all of the attendant circumstances." *Menzies v. Galetka*, 2006 UT 81, ¶ 63, 150 P.3d 480. "Because of the equitable nature of the rule, a district court has broad discretion to rule on a 60(b) motion." *Id.*

¶12    Reddy argues that the district court abused its discretion in denying his motion. He asserts that the Loan Agreement had an unconscionable interest rate and was never signed and accepted in Utah, which he claims "justifies relief" under rule 60(b). *See* Utah R. Civ. P. 60(b)(6). Capital Stack contends that the rule 60(b) motion was itself improper because Reddy alleges "errors of law" and he was required to raise such arguments in a direct appeal. Because we can easily resolve Reddy's arguments on the merits,

we assume, without deciding, that the rule 60(b) motion was a proper avenue to challenge the Confession of Judgment.

A.    Unconscionable Interest Rate

¶13    "A party claiming unconscionability bears a heavy burden" because "with a few exceptions, it is still axiomatic in contract law that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts for purpose of relieving one side or the other from the effects of a bad bargain." *Cantamar, LLC v. Champagne*, 2006 UT App 321, ¶ 31, 142 P.3d 140 (cleaned up). "In making an unconscionability determination, Utah courts engage in a two-part analysis to determine whether the contract, or a provision thereof, is void for (1) procedural unconscionability or (2) substantive unconscionability." *Knight Adjustment Bureau v. Lewis*, 2010 UT App 40, ¶ 7, 228 P.3d 754; *see also Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 42, 285 P.3d 1193. "[A] determination of substantive unconscionability may by itself lead to our concluding the contract was unconscionable . . . ." *Champagne*, 2006 UT App 321, ¶ 32.

¶14    Reddy argues that the 146.44% annual interest rate is substantively unconscionable because (1) it is almost five times the 30% annual interest rate this court considered in *Champagne*, (2) "it is well above interest rates that other states have proscribed, including by enacting usury laws," and (3) enforcement of the interest rate would be "one-sided and oppressive because it creates a severe imbalance in the obligations between the parties." To evaluate his argument "under the substantive unconscionability prong, we focus on the contents of the agreement," *id.* ¶ 33 (cleaned up), "examining the relative fairness of the obligations assumed," *Knight*, 2010 UT App 40, ¶ 7 (cleaned up).

¶15    First, there is a dearth of Utah caselaw that defines when an interest rate crosses the line of unconscionability. Utah

appellate courts have concluded that various interest rates between 18% and 58% per annum were not unconscionable. *See Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 69, 308 P.3d 424 (18% interest rate); *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 463 (Utah 1983) (58% interest rate); *Knight*, 2010 UT App 40, ¶ 9 (21.17% interest rate); *Champagne*, 2006 UT App 321, ¶ 34 (30% interest rate). We can find only one court that has found an interest rate unconscionable under Utah law. In *Danjanovich v. Robbins*, No. 04-CV-623, 2005 WL 2457090 (D. Utah Oct. 5, 2005), the federal district court found the interest rate of 100% per month—1,200% per annum—unconscionable under Utah law. *Id.* at *5.

¶16 These cases thus provide what the district court aptly described as the "bookends" of interest rates: 58% on the permissible end and 1,200% on the unconscionable end, with quite the chasm in between. Recognizing this gulf, Reddy argues that the 146.44% annual interest rate here is unconscionable because it is nearly five times higher than the rate in *Champagne*. But the reverse is true with respect to the interest rate in *Danjanovich*, which was roughly eight times higher than the interest rate here. And as between the bookends, the 146.44% interest rate is far closer to 58% than it is to 1,200%.

¶17 Next, Reddy directs us to usury statutes and cases from other states to show that the interest rate in the Loan Agreement is unconscionable. But what other states have done is not determinative here. The Utah Legislature has made clear that "[t]he parties to a lawful written . . . contract may agree upon *any* rate of interest for the contract, including a contract for . . . a loan." Utah Code § 15-1-1(1) (emphasis added).

¶18 Finally, Reddy asserts that enforcement of the interest rate would be "one-sided and oppressive." But Utah law "enables parties to freely contract, establishing terms and allocating risks between them. The law even permits parties to enter into

unreasonable contracts or contracts leading to a hardship on one party." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (cleaned up). Thus, "even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable." *Champagne*, 2006 UT App 321, ¶ 33 (cleaned up). "Instead, the terms must be so one-sided as to oppress or unfairly surprise an innocent party or there exists an overall imbalance in the obligations and rights imposed by the bargain according to the mores and business practices of the time and place." *Id.* (cleaned up).

¶19 Reddy borrowed $750,000 at an annual interest rate of 146.44% and agreed to pay Capital Stack $1,050,000 within seven months. Such high interest rates and short repayment terms are common for hard money loans like this one.[1] Moreover, Reddy is a sophisticated party with multiple businesses who willingly entered into the Loan Agreement to obtain the capital he deemed necessary for his businesses. There is no indication in the record that Reddy was unaware of his obligations or unwilling to meet them. Indeed, Reddy acknowledged that "it is not that we don't want to pay, but that we can't with the market squeeze going on as it is."

¶20 Therefore, the district court did not abuse its discretion in determining that the 146.44% annual interest rate is not unconscionable and in denying the rule 60(b) motion on this ground.

---

1. "Hard money loans are most commonly used in connection with real estate transactions and offer an alternative to conventional loans when financing is difficult to obtain." *State v. Chapman*, 2014 UT App 255, ¶ 2 n.2, 338 P.3d 230 (cleaned up). They "carry much higher interest rates than conventional loans." *Id.* (cleaned up).

B.     Received and Accepted in Utah

¶21     Reddy asserts that the district court abused its discretion by ignoring the "specific language at issue" and looking "beyond the four corners of the Loan Agreement" to conclude that an agreement was formed. We read the district court's analysis differently. The district court looked to the express language in the Loan Agreement to conclude that Capital Stack accepted and received the Loan Agreement in Utah.

¶22     Section 40 of the Loan Agreement states, "[T]he Loan is made in Utah (that is, no binding contract will be formed until Lender receives and accepts Borrower's signed Agreement in Utah)." The signature page of the Loan Agreement had signature lines for the Borrower and Guarantor, as well as a separate signature line below the following statement: "For Lender's Use Only: This [Loan] Agreement has been received and accepted by Lender in Utah after being signed by Borrower and any Guarantor(s)." Though the signature line below that statement is blank, the wording indicates that once Reddy—the Borrower and Guarantor—signed the Loan Agreement, it was considered "received and accepted" in Utah. Additionally, because the signature line was "For Lender's Use Only," a signature by Capital Stack was not required for formation of the agreement.

¶23     Furthermore, Capital Stack performed under the Loan Agreement by lending Reddy $750,000. And Reddy partially performed by paying back more than $350,000 of the $1,050,000. Thus, as noted by the district court, even if the Loan Agreement was not "received and accepted" in Utah, the parties demonstrated the existence of the Loan Agreement through their conduct. *See Livingston v. Finco Holdings Corp.*, 2022 UT App 71, ¶ 16, 513 P.3d 94 ("It is fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have otherwise indicated

their acceptance of the contract, or led the other party to so believe that they have accepted the contract." (cleaned up)).

¶24    Accordingly, the district court did not abuse its discretion in determining that the parties entered into the Loan Agreement and in denying the rule 60(b) motion on this ground.

## CONCLUSION

¶25    The district court did not abuse its discretion in denying Reddy's rule 60(b) motion. We affirm.

————