**NEWFLOWER MARKET, INC.,**
**Plaintiff–Appellee,**

v.

**Elizabeth C. COOK, Defendant–Appellant.**

**No. 09CA0956.**

Colorado Court of Appeals,
Div. I.

April 29, 2010.

Robinson Waters & O'Dorisio, Stephen L. Waters, Kimberly A. Bruetsch, Denver, Colorado, for Plaintiff–Appellee.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Craig A. Weinberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Elizabeth C. Cook, appeals the trial court's entry of summary judgment for plaintiff, Newflower Market, Inc. We affirm.

In this case of first impression in Colorado, we consider whether "the generally accepted rule" that "interest ceases to accrue on funds deposited by a stakeholder in an interpleader action during the time the funds are on deposit with the court," *Vento v. Colorado National Bank*, 985 P.2d 48, 51 (Colo.App.1999) (statutory interest), applies to contractual interest. We conclude that it does when the funds are properly interpleaded.

## I.  Factual and Procedural History

Cook owned all of Newflower's common stock. In dissolving their marriage, she and her former husband, Michael Gilliland, entered into a Memorandum of Understanding (MOU) in December 2005. Cook, Gilliland, and Newflower signed an amended separation agreement in May 2007, which was approved and entered as a court order. In the agreement, Cook transferred ninety-one percent of her Newflower common stock to Gilliland, retaining nine percent, which subsequent agreements reduced to five percent.

Pursuant to the agreement, Gilliland, as Newflower's president, signed a promissory note for $4,850,000 payable to Cook (Cook note). In addition, Newflower also signed a promissory note for $5,750,000 payable to the Gilliland/Cook Family Limited Partnership (FLP), which represented the aggregated separate amounts owed to FLP's partners (FLP note). The agreement further provided that on FLP's dissolution, Newflower would execute and deliver separate replacement promissory notes for each FLP partner's share, including one to Cook for $1,939,825 (Cook's individual FLP note).

Cook, Gilliland, and Newflower subsequently entered into a settlement agreement in October 2007 that provided Newflower would pay $4,850,000 toward principal on its obligations to Cook on January 2, 2008. It also stated that Cook "may apply [Newflower's] payment towards either obligation/note as she deems appropriate and within her sole discretion." Additionally, Newflower agreed to pay Cook $1,939,825 principal plus accrued and unpaid interest on its "remaining indebtedness" to her when it obtained additional funding, but no later than January 2, 2009. An addendum to the settlement agreement provided,

> The distribution of $1,939,825 principal due to Cook under the Settlement Agreement upon Funding shall be held by a mutually acceptable third party in an interest bearing or investment account directed by Cook and shall be distributed to Cook upon the earlier of the filing of an Amended 2005 joint income tax return or January 2, 2009.

On January 2, 2008, Newflower wired $4,850,000 plus accrued interest to Cook's personal bank account. Cook had provided Gilliland wiring instructions to deposit $1,939,825 in a Lehman Brothers account, but he refused to comply with that instruction because it did "not comport with the clear intent and purpose of the Settlement Agreement." On January 7, 2008, Cook notified Newflower that she wished to allocate $1,939,825 of the $4,850,000 payment to Newflower's FLP obligation to her individually, thus satisfying that obligation. However, she did not deposit $1,939,825 into a third-party investment account.

Newflower filed a complaint for interpleader and declaratory relief against Gilliland, Cook, and FLP, and with the district court's approval, deposited $1,939,825 in the court's registry. In an amended complaint, Newflower confirmed that it had tendered the $1,939,825 to the court for distribution to the parties entitled to it as determined by the court. It also sought declaratory judgment

(1) concerning the account to which the interpleaded payment should be made;

(2) that such payment satisfied Newflower's obligations to Cook;

(3) that the payment partially satisfied the FLP note; and

(4) that its common stock obligations to Cook had been completed and Cook's stock ownership rights were the same as those of any other holder of common stock.

In her answer to Newflower's original complaint, Cook asserted counterclaims that Newflower

(1) had breached the Cook note and the settlement agreement by failing to pay the $1,939,825 into an escrow account; and

(2) had breached the implied covenant of good faith and fair dealing in the settlement agreement by failing to consent to the Lehman Brothers escrow account.

Newflower and Cook filed motions for partial summary judgment. The district court entered summary judgment for Newflower because (1) Cook admitted that the FLP note was not replaced by new promissory notes payable to FLP's partners, including Cook, and (2) Cook and Gilliland had failed to designate a mutually acceptable third-party account to hold the $1,939,825. Cook appeals.

## II. Law

We review entry of summary judgment de novo. *Williams v. State Farm Mutual Auto. Ins. Co.,* 195 P.3d 1158, 1160 (Colo.App.2008). Summary judgment is appropriate where no genuine material factual issue exists, and the moving party is legally entitled to judgment. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1339–40 (Colo.1988). The moving party has the initial burden to establish that no triable factual issue exists. *Churchey,* 759 P.2d at 1340. The burden then shifts to the nonmoving party to establish that there is one. *Id.* All doubts concerning whether such an issue exists must be resolved against the moving party because the nonmoving party is entitled to all favorable inferences that may be drawn from the facts. *Id.*

■ Interpreting contract language poses a legal question that we review de novo. *Chandler–McPhail v. Duffey,* 194 P.3d 434, 437 (Colo.App.2008). Our primary obligation is to implement the contracting parties' intent according to the contract's plain language and meaning by giving effect to all provisions so that none is rendered meaningless. *Id.* Contracts must be construed as a whole, and specific phrases and terms should not be interpreted in isolation. *Rogers v. Westerman Farm Co.,* 29 P.3d 887, 898 (Colo. 2001). In interpreting a contract with multiple parts, we construe them together as a single instrument and give effect to all provisions. *Aronoff v. Western Federal Savings & Loan Ass'n,* 28 Colo.App. 151, 154, 470 P.2d 889, 891 (1970).

■ If the trial court reached the correct result, we may affirm its determination on different grounds. *Barham v. Scalia,* 928 P.2d 1381 (Colo.App.1996).

## III. Interest on Interpleaded Funds

Cook contends that she is entitled to interest on the $1,939,825 deposited with the court in Newflower's interpleader action. We disagree.

### A. Allocation Clause

■ Cook first argues that the district court's summary judgment rendered the clause allowing her to apply payment toward either note meaningless. We are not persuaded.

Cook maintains that her right to allocate part of the $4,850,000 payment to the $1,939,825 obligation meant that Newflower was not required to issue a new note to her individually for her portion of the FLP note. However, as the district court correctly observed, her interpretation conflicts with the amended separation agreement's express provisions setting forth FLP's dissolution process, which were subsequently reaffirmed in the settlement agreement.

The amended separation agreement provides that, "as part of the dissolution of the FLP, and in substitution of the FLP Note, Newflower shall execute and deliver new promissory notes to each of the partners of FLP" in specified principal amounts, Cook's being $1,939,825. According to the agreement, the individual notes were due and payable on or before December 31, 2008. In addition, the parties and FLP agreed to retain a certified public accountant (CPA) "to promptly undertake any and all actions to unwind, liquidate, and dissolve the FLP as quickly as possible."

Subsequently, Gilliland, Cook, Newflower, and others entered into the settlement agreement to "reach a final and binding resolution and settlement" of disputes regarding the MOU's and amended separation agreement's terms and conditions. In the settlement agreement, Gilliland and Cook, individually and as FLP partners, "instruct[ed] [the CPA] to expedite division and distribution of [FLP's] assets by November 15, 2007." The partners' proposed individual promissory notes attached to the agreement were dated December 1, 2007 and were "due and payable in full on or before December 31, 2008." The agreement also provided that "as a part of [FLP's] dissolution, and consistent with the Amended Agreement, [Newflower] *will owe* Cook an additional $1,939,825 principal," and that "on January 2, 2008 (*and not before*), [Newflower] shall pay Cook $4,850,000.00 towards principal on its obligation(s) to Cook" (emphasis added). The language granting Cook the right to allocate Newflower's payment follows these provisions.

The agreements' plain language indicates the parties intended that the FLP note, as one of FLP's assets, be divided and distributed on December 1, 2007, approximately thirteen months before Newflower paid the Cook note. The parties also intended that the FLP's partners' individual notes would be paid on or before December 31, 2008, almost a full year after the Cook note's due date. However, if Cook's individual FLP note was not paid by the time Newflower paid the Cook note on January 2, 2008, the settlement agreement's allocation language allowed Cook to apply Newflower's $4,850,000 payment to either her individual FLP note or the Cook note within her sole discretion.

Thus, Cook's right to allocate the $4,850,000 payment depended on her individual FLP note being in existence, and wholly or partially unpaid, at the time the Cook note was paid. However, Cook's individual FLP note was not in existence when Newflower made the $4,850,000 payment on January 2, 2008. Moreover, when Newflower made the payment, the FLP note had not been cancelled, and FLP could still seek to enforce it against Newflower if $1,939,825 of the $4,850,000 payment had been allocated as

Cook requested to satisfy Newflower's obligation to her under the parties' intended plan to replace the FLP note with individual notes to FLP's partners. Thus, Cook's interpretation conflicts with the express contractual provision governing FLP's dissolution and potentially subjects Newflower to multiple liabilities. Because Cook's individual FLP note was never created, Cook could not attempt to prematurely satisfy a debt that did not yet exist through the allocation provision.

### B. Contractual Interest Obligation

▮ Cook also argues that depositing the interpleaded funds in the district court's registry did not terminate Newflower's contractual obligation to pay interest. We are not persuaded.

▮ Here, the district court properly granted Newflower's interpleader motion because the company was faced with potential competing claims. Because the $5,750,000 FLP note had not been cancelled, FLP possessed an enforceable negotiable instrument. Until it was cancelled, FLP could assert a claim for payment against Newflower. Additionally, the settlement agreement required that Gilliland and Cook agree on a mutually acceptable third-party account for the $1,939,825 deposit. Had Newflower paid Cook the $1,939,825 without Gilliland's consent to the account, Gilliland could have asserted a breach of contract claim against Newflower. Newflower also risked liability to Cook if it refused to pay her until the other conditions were met. Because Newflower may have been exposed to multiple claims, its interpleader action was appropriate. *See* C.R.C.P. 22(1) ("Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."); *see also Benton v. Adams*, 56 P.3d 81, 86 (Colo.2002) ("Interpleader allows a person subject to the possibility of competing claims to avoid the risk of double or multiple liability that could result from adverse determinations in different courts.").

▮ In *Vento v. Colorado National Bank*, 985 P.2d 48, 51 (Colo.App.1999), another division of this court adopted "[t]he generally

accepted rule ... that interest ceases to accrue on funds deposited by a stakeholder in an interpleader action during the time the funds are on deposit with the court." *See also* J.E. Keefe, Jr., Annotation, *Allowance of Interest on Interpleaded or Impleaded Disputed Funds*, 15 A.L.R.2d 473, § 2[a] (1951) (general rule is that a stakeholder "is not chargeable with interest after the deposit of [disputed] funds in court ['s registry]"). Cook correctly notes that *Vento* involved statutory, not contractual, interest. We now extend the general rule announced in *Vento* and conclude that contractual interest ceases to accrue on properly interpleaded funds while the funds are deposited with the trial court.

Cook cites several out-of-state and federal cases to support her position that a party owes contractual interest on interpleaded funds. Those cases are distinguishable because they involved instances where a party wrongfully brought an interpleader action to avoid paying contractual interest or interpleader was inappropriate.

Cook primarily relies on *Renaissance Enterprises, Inc. v. Ocean Resorts, Inc.*, 334 S.C. 324, 513 S.E.2d 617, 619 (1999). However, that case involved contractual interest accruing on a judgment for past due commissions. By contrast, the $1,939,825 here was not payable to Cook under the separation agreement because Gilliland and Cook had not agreed on a mutually acceptable third-party account and the FLP note had not been replaced by new individual promissory notes to each partner.

*LTV Corp. v. Gulf States Steel, Inc.*, 969 F.2d 1050, 1063 (D.C.Cir.1992), also cited by Cook, involved a promissory note which provided that the entire unpaid principal amount, including 18.75% interest, was due upon default. When the court's deposit order was entered, the defendant had been in default for over four months. *Id.* at 1064. In ruling that the defendant was liable for the note's entire principal amount plus contractual interest, the court noted that interpleader "cannot be used as a means of altering the contractual relationships and legal duties of the parties." *Id.* at 1063 (quoting *In re Dep't of Energy Stripper Well Exemp-*

*tion Litig.*, 124 F.R.D. 217, 218–19 (D.Kan. 1989)). Here, the district court concluded that Newflower had not breached the settlement agreement. Moreover, the interpleader action was not used to alter the parties' contractual obligations because Cook and Gilliland had not designated a mutually acceptable third-party account and the existing FLP note had not been replaced by individual partners' notes—two conditions precedent to requiring the $1,939,825 deposit.

The other cases cited by Cook address circumstances where interpleader was inappropriate. *See Dep't of Energy Stripper Well Exemption Litig.*, 124 F.R.D. at 218 (denying motion to deposit funds into court when court previously established escrow account because interpleader "is proper only when there is a dispute concerning the funds"); *Prudential Ins. Co. v. BMC Indus.*, 630 F.Supp. 1298, 1300 (S.D.N.Y.1986) (interpleader inappropriate where plaintiffs sought deposit with court to avoid issue of ratification by acceptance and possibility of later unavailability of funds).

Here, Newflower properly interpleaded the funds to avoid being subject to potential competing claims. Cook's counterclaims did not allege that Newflower interpleaded the funds to evade its contractual duties. Because we conclude that the interpleader action was proper, Cook is not entitled to contractual interest on the interpleaded funds.

Other courts have observed that "interpleader is an equitable action controlled by equitable principles and thus the award of interest in an interpleader action depends upon equitable considerations." *Canal Ins. Co. v. Pizer*, 183 Ariz. 162, 901 P.2d 1192, 1195 (Ct.App.1995) (collecting cases). We decline to adopt the inequitable result urged by Cook, which would make Newflower responsible for interest on properly interpleaded funds. *See Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850 (Colo.1992) (equity's purpose is to promote and achieve justice with some degree of flexibility, which requires inquiry into the particular case's circumstances).

### C. Releasing Funds

Cook argues that Newflower should, at a minimum, be responsible for interest from January 2, 2009 because it objected to releasing the interpleaded funds. We disagree.

Cook filed a motion requesting that the court release the funds because there was "no defense to relinquishing the money to her on [January 2, 2009]." However, Cook did not file a motion for summary judgment, and no judgment in her favor entitling her to the funds existed at that time. Additionally, FLP had not disclaimed any interest in the interpleaded funds. Thus, the funds remained subject to potential multiple claims. The court therefore correctly concluded that Newflower's objection was not frivolous and groundless.

Accordingly, we conclude that the district court did not err in determining that Newflower is not responsible for contractual interest on the interpleaded funds after the funds were deposited with the court.

### IV. Duty of Good Faith

Cook argues that because a material factual issue existed as to whether Newflower breached the implied duty of good faith by refusing to consent to the Lehman Brothers investment account, the district court erred in entering summary judgment for Newflower. We disagree.

Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 690 (Colo.App.2006). The doctrine exists to effectuate the parties' intentions and honor their reasonable expectations. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo.2006). Violating the duty of good faith and fair dealing gives rise to a claim for breach of contract. *Id.* Whether a party acted in good faith is a factual question. *Platt v. Aspenwood Condominium Ass'n*, 214 P.3d 1060, 1066 (Colo.App.2009).

Cook only alleges that Newflower violated the duty of good faith by refusing to agree to the Lehman Brothers account. Her complaint did not assert that Newflower violated the duty of good faith by refusing to issue replacement FLP notes to the individual partners. As discussed above, the parties contemplated that Cook's individual FLP note would be created before she was entitled to allocate payment. Thus, Cook was not entitled to allocate funds, and any alleged failure to negotiate in good faith to designate an account had not yet been triggered. *See Parker*, 138 P.3d at 292.

Because no genuine material factual issue existed as to whether Newflower breached its duty of good faith and fair dealing, the court did not err in entering summary judgment for Newflower.

### V. Stock Dilution

Cook contends the district court erred in concluding that her Newflower common stock shares are subject to the same risk of dilution as would be suffered by any other holder of common stock issued as of November 30, 2005. We disagree.

The MOU provided, in relevant part, that Cook "shall have all the same ownership rights that [the other FLP partners] have as to the Newflower market shares . . . and, for all purposes, [Cook's] retained stock in Newflower Markets shall be treated as all other stock in that corporation that has been issued through November 30, 2005." The MOU further provided that Gilliland had the right to issue new stock in Newflower to fulfill certain stock options on the condition that the new stock did not dilute Cook's retained shares.

The separation agreement stated that Cook would retain five percent of Newflower's outstanding common stock, which

> stock shall, at all times hereafter, have all of the same ownership and voting rights, preemptive rights, priorities, preferences, or other rights, as the shares of Newflower being acquired or retained by Gilliland under this Amended Agreement. The spirit and mutual intent of the Parties and Newflower is that . . . Cook's stock and the children's stock shall be entitled to the same treatment and shall be accorded the same beneficial rights and preferences as Gilliland's Newflower stock. In addition,

Paragraphs 67 and 68 of the MOU shall remain in full force and effect.

The settlement agreement provided, "[Newflower] acknowledges and understands that pursuant to the MOU and the Amended Agreement, Cook is to own five percent (5%) of [Newflower's] outstanding common stock. . . . Cook's 5% ownership shall be subject to dilution only as set forth in the MOU and/or Amended Agreement."

Cook requested that the district court interpret these contractual provisions concerning her stock ownership. The court concluded that the sole contractual dilution restriction provided that Cook's stock could not be diluted by Newflower issuing new stock to fulfill the specific stock options identified in the MOU. Otherwise, the court determined that Cook's shares were subject to the same dilution risk as would be suffered by any other shareholder holding common stock in the company issued as of November 30, 2005. We agree with these conclusions.

The district court correctly observed that the MOU forbade diluting Cook's proportional holding in Newflower by issuing new stock to fulfill the agreed-upon stock options. Otherwise, the agreements stated that Cook's common stock rights were the same as those enjoyed by other holders of common stock.

## VI.   Attorney Fees

Cook requests an attorney fees and costs award based on the Cook note's fee provisions and C.A.R. 39.5. However, because Cook has not prevailed on any issue, we decline to award her fees and costs.

The judgment is affirmed.

Judge TAUBMAN and Judge FURMAN concur.