**Barbara KIRKMEYER, Plaintiff–Appellant,**

v.

**DEPARTMENT OF LOCAL AFFAIRS, State of Colorado and Susan E. Kirkpatrick, Executive Director in her official capacity, Defendants–Appellees.**

No. 09CA0725.

Colorado Court of Appeals, Div. V.

March 31, 2011.

Frank & Finger P.C., William S. Finger, Evergreen, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Stephanie Lindquist Scoville, Senior Assistant Attorney General, Vincent E. Morscher, First Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

Plaintiff, Barbara Kirkmeyer, formerly a state employee serving in the senior executive service (SES), a special pay plan, sought return to a vacant position in the traditional pay plan to which she had been certified, when her most recent annual SES contract expired. She appeals the summary judgment upholding her separation from state employment in favor of defendants, Colorado Department of Local Affairs (DOLA); Susan E. Kirkpatrick, in her capacity as DOLA's Executive Director; and Richard Gonzales, in his capacity as Executive Director of the Department of Personnel and Administration.[1] We reverse the summary judgment and remand with instructions for the trial court to stay further proceedings until Kirkmeyer's appeal to the Colorado State Personnel Board (Board) is final.

## I. Introduction

### A. Legal Background

Under the Colorado Constitution article XII, section 13(1), "[a]ppointments and promotions to offices and employments in the personnel system of the state shall be made according to merit and fitness ... without regard to race, creed, or color, or political affiliation." Article XII, section 13(8) provides that "[p]ersons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law."[2] *See Dep't of Institutions v. Kinchen,* 886

P.2d 700, 704 (Colo.1994) (equating "failure to comply with standards of efficient service" with termination only for just cause).

The SES is a special pay plan in which up to 125 state employees negotiate annual contracts at higher salaries than are available in the traditional pay plan. § 24–50–104(5)(c)–(d), C.R.S.2010. As explained in the State Personnel Board Rules (Rules), 4 Code Colo. Regs. 801–1, the SES "is an alternative performance-based pay plan available for employees in positions that are in the management class" who are responsible for managing significant human and capital resources. Rule 2–11.

Creating and filling an SES position involves three steps. First, department heads nominate positions for inclusion in the SES pay plan; the State Personnel Director makes the final decision. Rule 2–11(A). Second, despite an employee's position being nominated for inclusion in the SES, the employee may choose to remain a classified employee in the traditional pay plan. Rule 2–12. Third, if an employee accepts an SES position, then the department and the employee negotiate an annual contract that is subject to nonrenewal for any reason. Rule 2–11(C).

The Rules also explain the consequences of nonrenewal. According to Rule 2–11(C):

[I]n consideration for a salary that exceeds the maximum of the management class, an employee entering into a senior executive service contract may be required to waive all appeal, disciplinary, grievance, and other rights and privileges of the state personnel system with respect to the expiration of the non-renewed contract. If the department head gives the employee written notice of non-renewal by May 1, the department head *shall either separate the employee from state service upon expiration of the contract on June 30* or appoint

---

1. Gonzales is not listed in the caption and has not entered an appearance, although in its summary judgment order the trial court upheld his decision adverse to Kirkmeyer. Because both Kirkmeyer and DOLA address this aspect of the order, and like DOLA, Gonzales would be represented by the Attorney General, we will address it as well.

2. Certain positions, not relevant here, are exempted from this merit system. Colo. Const. art. XII, § 13(2); Colo. Const. art. XII, § 13(9).

the employee to a vacant non-senior executive service position for which qualified.

(Emphasis added.) Rule 2–13 states that:

Any employee entering or remaining in the [SES] pay plan on or after July 1, 2003, waives retention and reemployment rights with respect to any other position in the personnel system pursuant to Board Rule 1–19, *but shall have reinstatement privileges with respect to any vacant position in the employee's current or previously certified class.*

(Emphasis added.) And under Rule 1–19, "An employee may voluntarily and knowingly waive, in writing, all rights under the state personnel system, except where prohibited by state or federal law."

### B. Facts

In 2001, DOLA hired Kirkmeyer into the state classified personnel system. Within three years, she had been certified to a position in the management class. In 2004, Kirkmeyer's division director position was approved for placement in the SES.

Kirkmeyer entered into three SES contracts as division director. Her first and second SES contracts both contained the following phrase based on section 24–50–104(5)(c): "Employees in the senior executive service have no rights to positions outside of the senior executive service." These contracts also provided: "Employees in the senior executive service have no layoff or retention rights except the right to receive 45 days' notice before positions are abolished." However, they granted Kirkmeyer "retention rights to a vacant Management level position in the department for which she meets the minimum qualifications" if her position was abolished because of lack of funds, a statutory change, or reorganization.

The terms of her final SES contract, which ran from July 1, 2006 to June 30, 2007, and its nonrenewal frame the issues before us. Those provisions include, as relevant here:

4) If the Executive Director gives the employee written notice of non-renewal by May 1, the employee shall either be separated from state service upon expiration of the contract on June 30 or appointed to a vacant non-senior executive service position at either the contract salary or the statutory salary lid, whichever is lower;

. . .

7) Employees in the senior executive service have no retention or reemployment rights with respect to any other position in the state personnel system;

. . .

With respect to any separation from state service as a result of the expiration or non-renewal of this contract, the employee further voluntarily waives all appeal, disciplinary, grievance, and other rights and privileges of the state personnel system, except for the following rights specifically agreed to by the Executive Director[.]

But this contract also contains a final provision, which like the trial court we refer to as the safe harbor clause (SHC):

If the employee is not offered a contract for the 07–08 fiscal year, regardless of whether notice was timely given pursuant to State Personnel Rule 2–11(C) and without regard to paragraph 4 above, *the employee shall be returned to the traditional classified pay plan at either the contract salary or the statutory salary lid, whichever is lower.*

(Emphasis added.)

In deposition testimony, Kirkmeyer agreed with the statement that, "if [the contract had] said, 'Employees in the senior executive service have no guarantee to positions outside of the senior executive service,' that would be an accurate understanding." However, she also testified that in signing the first and second SES contracts, she did not believe that she was "giving up any rights in the State personnel system," and that without the SHC, she would not have signed the third contract.

2006 was a gubernatorial election year that would necessarily result in a new administration because the then-current governor was term-limited. Gonzales' predecessor caused the SHC to be drafted and invited all executive directors to include it in their divisions' 2006–2007 SES contracts. He testified that this provision responded to "fear and concern" on the part of long-term employees

who had moved into SES positions that non-renewal of their SES contracts by the new administration could preclude them from returning to classified positions.

Between December 2005 and August 2006, Kirkmeyer served as the acting Executive Director of DOLA. In that capacity, she attended a cabinet meeting where the SHC was presented and approved. She added it to her 2006–2007 contract. Out of concern over signing her own contract on behalf of DOLA, she obtained the signature of the governor's chief of staff.

After taking office in January 2007, Governor Bill Ritter appointed Kirkpatrick as the new Executive Director of DOLA. In February, Kirkpatrick sent Kirkmeyer, who had returned to her position as division director, a letter stating that because the SHC "is inconsistent with Colorado law, it will not be honored." In April, Kirkpatrick sent Kirkmeyer a second letter "advis[ing] that your SES contract will not be renewed and, at the expiration of your SES contract, you will be separated from service" pursuant to paragraph 4 of the contract. When Kirkmeyer's contract ended, she was not returned to a position in the traditional pay plan.

## C. Procedural History

### 1. Board Action

Upon receiving notice of nonrenewal of her SES contract and termination of her state employment, Kirkmeyer first appealed to the Board, asserting that DOLA violated the SHC by failing to offer her a position within the traditional pay plan, and that DOLA unlawfully discriminated against her based on political affiliation. The Board designated an administrative law judge (ALJ), who sua sponte dismissed Kirkmeyer's appeal for lack of subject matter jurisdiction because she "was not a certified employee under section 24–50–104(5)(c)," thus she had "no right to employment," and she could not rely on the SHC for any post-SES employment rights due to the conflict with section 24–50–104(5)(c).

On appeal to this court, a division concluded that under the SHC, Kirkmeyer "was entitled at least to a hearing" regarding her right to compete for any open positions. *Kirkmeyer v. Dep't of Local Affairs,* 2009 WL 343934 (Colo.App. No. 07CA2566, Feb. 12, 2009) (not published pursuant to C.A.R. 35(f)) (*Kirkmeyer I* ).

On remand, the Board designated the same ALJ, who interpreted *Kirkmeyer I* as providing Kirkmeyer a hearing only to determine her "reinstatement rights" after her SES position ended. Following a hearing, the ALJ rejected Kirkmeyer's claims that DOLA violated her right to compete for an open position and unlawfully discriminated against her based on political affiliation by not offering her another position. When the Board adopted the ALJ's decision, Kirkmeyer appealed in *Kirkmeyer v. Department of Local Affairs,* 2011 WL 1168318 (Colo.App. No. 10CA1490, Mar. 31, 2011) (not published pursuant to C.A.R. 35(f)) (*Kirkmeyer II* ).

### 2. District Court Action

While the jurisdictional issue was pending before the ALJ, Kirkmeyer filed a separate action in district court and appealed to Gonzales. When Gonzales rejected Kirkmeyer's appeal, she sought review in a separate district court action under § 24–4–106, C.R.S. 2010, and the two actions were consolidated.

In district court, Kirkmeyer primarily alleged violation of the SHC, which she asserted implemented her employment rights under the Colorado Constitution. She also argued that DOLA refused to return her to a position in the traditional pay plan based on political discrimination in violation of article XII, section 13(1) of the Colorado Constitution.

Following some discovery, Kirkmeyer, DOLA, and Kirkpatrick moved for summary judgment. Gonzales did not. In granting summary judgment for DOLA, Kirkpatrick, and Gonzales, the trial court concluded that the SHC was "illegal" and "unenforceable" because it "was not in compliance with C.R.S. § 24–50–104(5)(c)," Rule 2–11(C), and Rule 2–13.

On appeal, Kirkmeyer contends that if section 24–50–104(5)(c), Rule 2–11(C), and Rule 2–13 defeat the SHC, then they are contrary to the unified, merit-based state personnel

system, in which employees serve during efficient service until retirement, established by article XII, section 13 of the Colorado Constitution. DOLA responds that by freely entering into the SES under earlier contracts that cited to section 24–50–104(5)(c) and paraphrased the language on which Gonzales and the trial court relied, Kirkmeyer waived any right to return to a position in the traditional pay plan. Alternatively, DOLA asserts that because the SHC is at odds with this statute and implementing Rules, which it contends are constitutional, this term in Kirkmeyer's third SES contract is void.

### 3. Remand Appeal

The parties have agreed that this division should decide both this appeal and *Kirkmeyer II* in simultaneous opinions. Today, in *Kirkmeyer II*, the majority affirms the Board except to the extent that it adopted the ALJ's decision limiting the hearing to Kirkmeyer's right to compete for open positions. The majority concludes that because the SHC is ambiguous, it should be interpreted by the Board on remand to determine whether Kirkmeyer has any additional employment rights.

### II. Review of Summary Judgment

Summary judgment is an issue of law we review de novo. *Newflower Market, Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo.App.2010). Entry of summary judgment is appropriate only where no disputed issue of material fact exists. *Id.*

### III. Challenge to Section 24–50–104(5)(c)

We first address Kirkmeyer's contention that if section 24–50–104(5)(c) ("[a]ny person in the senior executive service shall have no right to a position outside of the senior executive service") precludes her return to a position in the traditional pay plan, it is uncon-

stitutional on its face because it creates a parallel state personnel system not subject to article XII, section 13. She also contends it is unconstitutional as applied because refusal to return her to a vacant position in the traditional pay plan on expiration of her third SES contract defeated her right to remain a state employee during efficient service.

■ Although statutes have been invalidated under article XII, section 13,[3] we begin by considering whether Kirkmeyer has standing to raise these claims. Because we interpret this phrase as covering only employees while in the SES, we conclude that she lacks standing to mount a facial challenge and we need not address its constitutionality as applied.

■ Standing is a jurisdictional prerequisite that an appellate court must consider sua sponte. *People in Interest of J.C.S.*, 169 P.3d 240, 244 (Colo.App.2007). Where, as here, fundamental constitutional rights are not implicated, "[an] individual may not raise a claim that the statute is unconstitutional as applied to others in situations not before the court." *People v. Shepard*, 983 P.2d 1, 3 n. 3 (Colo.1999). Hence, "a party must allege an injury in fact to a legally protected interest in order to have standing" to challenge the facial constitutionality of a statute. *Poudre Valley Rural Elec. Ass'n v. City of Loveland*, 807 P.2d 547, 550–51 (Colo.1991).

Our analysis of the interplay between the SHC and section 24–50–104(5)(c), on the one hand, and possible tension between section 24–50–104(5)(c) and article XII, section 13, on the other hand, narrows because Kirkmeyer and DOLA agree that the sole issue is whether the SHC violates section 24–50–104(5)(c) by giving Kirkmeyer a guaranteed right of reemployment to any vacant position in the traditional pay plan for which she had

---

**3.** *See Colorado Ass'n of Public Employees v. Lamm*, 677 P.2d 1350, 1360–61 (Colo.1984) (previous version of section 24–50–114(2), C.R.S. 2010, invalidated because it authorized temporary appointments of longer than six months); *Colorado Ass'n of Public Employees v. Bd. of Regents*, 804 P.2d 138, 146 (Colo.1990) (section 23–21–406, C.R.S.1990, held unconstitutional because it allowed employees to keep their jobs during a hospital reorganization only if they agreed to give up state personnel system's protections); *Rice v. Auraria Higher Education Center*, 131 P.3d 1096, 1100–01 (Colo.App.2005) (reorganizations resulting in termination of state employees without providing the option of remaining within the state personnel system "are unconstitutional").

been certified following nonrenewal of her SES contract.[4] If section 24–50–104(5)(c) alone defeats Kirkmeyer's reinstatement claim under the SHC, then we would be required to decide whether the statute is unconstitutional because it is at odds with the guarantee in article XII, section 13(8) that classified employees enjoy job security during "efficient service" until voluntary retirement. Hence, Kirkmeyer's standing is inextricably intertwined with interpretation of the statute.

We recognize that because on remand in *Kirkmeyer II* the Board might not reach the statute based on its interpretation of the SHC or its application of additional rights, if any, that Kirkmeyer has under the SHC, we could avoid her constitutional claims, at least temporarily, by declining to interpret the statute. But DOLA's waiver argument that the Board may address on remand is inextricably intertwined with the meaning of the phrase, employees "in the senior executive service shall have no right to a position outside of the senior executive service," which appears in Kirkmeyer's first SES contract, her second SES contract, and section 24–50–104(5)(c). Further, interpretation of a statute is de novo. *Petron Development Co. v. Washington County Bd. of Equalization,* 91 P.3d 408, 410 (Colo.App.2003), *aff'd,* 109 P.3d 146 (Colo.2005). Thus, judicial economy would not be served by leaving its interpretation to the Board on remand, subject to our de novo review in a later appeal, and we decline to do so. *See People v. Newton,* 966 P.2d 563, 570 n. 8 (Colo.1998).

Where statutory language is clear and unambiguous, our analysis begins and ends with its plain meaning. *Wells Fargo Bank v. Kopfman,* 226 P.3d 1068, 1072 (Colo. 2010). "Words and phrases should be given effect according to their plain and ordinary meaning[.]" *Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n,* 183 P.3d 563, 567 (Colo.2008); *see also* § 2–4–101, C.R.S.2010. The plain meaning may also be discerned from the placement and interaction of subsections within the statutory framework. *See Romero v. People,* 179 P.3d 984, 987–88 (Colo.2007).

The phrase at issue applies to "[a]ny person *in* the senior executive service." § 24–50–104(5)(c) (emphasis added). "In" is "used as a function word to indicate the specific object, sphere, or aspect to which a qualification is restricted." *Webster's Third New International Dictionary* 1139 (2002); *see Marcilionis v. Farmers Ins. Co.,* 318 Or. 640, 871 P.2d 470, 472 (1994) ("'In' commonly is used as a function word to indicate location or position in space or in some materially bounded object."). Here, use of "in" connotes that the statute applies only to employees who hold SES positions.

This interpretation is supported by the organization and other provisions of section 24–50–104(5)(c) and (d), which comprise the entire statutory authority for the SES program.[5] The other sentences in subsection 104(5)(c) establish the SES and explain the process for an employee to enter it. Consistent with these provisions, the final sentence in subsection 104(5)(c) refers to an employee who is "in" the SES.

---

**4.** At oral argument, Kirkmeyer conceded that under the SHC she does not assert any right to bump an incumbent employee, but only to be placed into a vacant position.

**5.** The statute, in its entirety, reads:

(c) The senior executive service shall be limited to one hundred twenty-five positions. The state personnel director shall establish criteria for inclusion in the senior executive service and shall review each nominated position before it is placed in the pay plan for the senior executive service. The head of the department or agency or state auditor for employees of the state auditor's office shall make appointments to the senior executive service based on com-

petitive selection and is responsible for the management of the employees in such plan. Any person in the senior executive service shall have no right to a position outside of the senior executive service.

(d) In the pay plans for medical and the senior executive service, there shall be no anniversary-based merit increases. The salaries in such pay plans shall be based on the negotiation of an annual contract between the employee and the department head or the state auditor, when appropriate, and the amount of such salaries may increase, decrease, or remain unchanged from year to year. Any employee dismissed for failure to perform under such contract may only appeal directly to the state personnel board. § 24–50–104(5).

The first and second sentences in section 24–50–104(5)(d) describe pay practices affecting only SES employees. But the final sentence deals with the appeal rights of an employee who has been "dismissed" from the SES. This sentence shows that the legislature knew how to address employee rights after leaving the SES. *Cf. People v. Jaramillo*, 183 P.3d 665, 671 (Colo.App.2008) (because General Assembly "clearly knew how to do so, [ ] we must respect [its] choice of language").

This interpretation also leads to a rational result, for the following three reasons. *Romero*, 179 P.3d at 988 (interpretation should lead to a rational result); *see also* § 2–4–201(1)(c), C.R.S.2010.

First, SES contracts cycle annually. But without the last sentence of subsection 104(5)(c), employees in such positions might apply for traditional pay plan positions that become vacant during the terms of their contracts. *See* Rule 4–9 ("An employee ... may initiate a transfer."). Our interpretation protects the hiring departments against such turnover in high level positions.

Second, "[t]he citizens of this state have recognized and protected the important interest state employees have in continued employment through enactment of Article XII, section 13(8), of the Colorado Constitution." *Department of Institutions v. Kinchen*, 886 P.2d at 710. Interpreting the sentence as negating *all* retention rights would not benefit the state. To the contrary, such an interpretation would limit the pool of employees otherwise qualified for SES positions to those willing to forfeit retention rights if their contracts were not renewed.

Third, and contrary to DOLA's assertion, enforcing the SHC would not allow Kirkmeyer to "have [her] cake and eat it too" by obtaining an increased SES salary without giving up her right to continued state employment. Kirkmeyer does not assert bumping rights. *See Royal v. Colorado State Per-*

*sonnel Bd.*, 690 P.2d 253, 255 (Colo.App.1984) (some state employees entitled to bumping rights). Thus, despite the SHC, Kirkmeyer assumed the risk that her state employment would end if no traditional pay plan position in a class to which she had been certified was vacant when her third SES contract expired.

▆▆▆▆ Moreover, we have an "obligation to avoid interpretations that invoke constitutional deficiencies." *Catholic Health Initiatives Colorado v. City of Pueblo*, 207 P.3d 812, 822 (Colo.2009) (internal quotations omitted); *see also Colorado Springs Disposal v. Indus. Claim Appeals Office*, 58 P.3d 1061, 1065 (Colo.App.2002). Thus, "[w]hen possible, statutes are to be construed in such manner as to avoid questions of their constitutional validity." *People v. Thomas*, 867 P.2d 880, 883 (Colo.1994); *see also Buckley v. Chilcutt*, 968 P.2d 112, 116 (Colo.1998).[6] Hence, even if ours is not the only plausible interpretation, this principle disfavors the interpretation of section 24–50–104(5)(c) by DOLA, Gonzales, and the trial court, which would require us to address possible constitutional infirmities.

For the same reason, we decline to interpret the last sentence of section 24–50–104(5)(c) as providing that entry into the SES alone waives all future rights to return to a position outside of the SES. This interpretation would raise the broader constitutional question of a parallel state personnel system in which employees lack the protections of article XII, section 13. Hence, even if it is also plausible, "we must adopt the constitutional interpretation of the statute." *Renteria v. Colorado State Dep't of Personnel*, 811 P.2d 797, 799 (Colo.1991).

▆▆▆ Accordingly, we interpret the last sentence in section 24–50–104(5)(c), and of necessity its analogue in Kirkmeyer's first and second SES contracts, as prohibiting an employee's return to an "outside" position only while the employee serves in the SES. Therefore, we conclude that Kirkmeyer lacks

---

6. We conclude that this cautionary principle applies to an as-applied challenge. *Clark v. Martinez*, 543 U.S. 371, 380–81, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) ("If one [plausible interpretation] would raise a multitude of constitutional problems, the other should prevail—whether or

not those constitutional problems pertain to the particular litigant before the Court."). *But see Texas Democratic Party v. Benkiser*, 459 F.3d 582, 591 n. 15 (5th Cir.2006) ("[T]his is an as-applied challenge.... Therefore, the canon of avoidance is not an appropriate analytical vehicle.").

standing to attack section 24–50–104(5)(c) on its face because the statutory preclusion of an "outside" position applies to employees only while in the SES, not to an employee whose SES contract has expired, and she neither seeks relief for any injury suffered while she was in the SES nor any longer holds an SES position. *See Flakes v. People,* 153 P.3d 427, 437 (Colo.2007) (no standing to challenge a statute where party not "directly affected by the ... statute"). In contrast, Kirkmeyer has standing to raise the constitutionality of section 24–50–104(5)(c) as applied to her because Gonzales, DOLA, and the trial court all relied on it to avoid the SHC. However, based on our interpretation of the statute, her as-applied challenge is moot.

## IV. Application of Board Rules

DOLA contends that independent of the statute, Rules 1–19, 2–11(C), and 2–13 preclude Kirkmeyer from using the SHC to demand return to a vacant traditional pay plan position. Kirkmeyer responds that if such Rules defeat the SHC, they are also contrary to the unified, merit-based state personnel system, and therefore are unconstitutional. We decline to address this issue because these rules will be interpreted, if necessary, in proceedings before the Board on remand from *Kirkmeyer II,* and their constitutionality can be addressed in further proceedings before the district court.

■ In general, "it is our obligation and crucial to our exercise of judicial authority that we do not resolve constitutional questions or make determinations regarding the extent of constitutional rights unless such a determination is essential and the necessity for such a decision is clear and inescapable." *Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190, 194 (Colo.2005). For example, in *Friedman v. Motor Vehicle Div.,* 194 Colo. 228, 229, 571 P.2d 1086, 1087 (1977), the supreme court declined to decide a constitutional issue because it was not "essential to disposition of the pending case .... [s]ince we are remanding the case for a rehearing which may settle this dispute." *Accord Renteria,* 811 P.2d at 799; *see also Estelle v. Gamble,* 429 U.S. 97, 112 n. 7, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (where further proceedings will occur on remand, "the facts as proved may remove any constitutional question").

In *Kirkmeyer II,* the majority concludes that the SHC is ambiguous and that the Board must conduct a hearing to ascertain Kirkmeyer's rights under it. Until those rights are determined, for us to decide how the Rules apply to the SHC would be premature. Further, the Board could conclude the SHC is unenforceable on other grounds, such as waiver or estoppel, and never reach the issue of whether the Rules defeat the SHC. In that event, Kirkmeyer's constitutional challenges would be moot. And unlike our de novo interpretation of section 24–50–104(5)(c), in further proceedings before the district court, that court would defer to the Board's interpretation of its own Rules. *City of Commerce City v. Enclave West, Inc.,* 185 P.3d 174, 178 (Colo.2008).

Accordingly, we express no opinion on the constitutionality of any Rule.

## V. Kirkmeyer is Not Entitled to Summary Judgment

■ Kirkmeyer next contends she is entitled to summary judgment on her declaratory judgment and breach of contract claims. Because in *Kirkmeyer II* the majority concludes that the SHC is ambiguous, we hold that factual disputes exist on the extent of her rights and whether waiver and estoppel preclude enforcement of those rights, thereby precluding summary judgment.

## VI. Kirkmeyer's Other Arguments Need Not be Addressed

According to Kirkmeyer, she had "vested constitutional and contract rights" that were taken by section 24–50–104(5)(c) in violation of article II, section 11 of the Colorado Constitution, which provides that the legislature may not pass a "law impairing the obligation of contracts, or retrospective in its operation ...." Our conclusion that section 24–50–104(5)(c) does not void the SHC disposes of this argument.

Kirkmeyer also argues that her "right of continued employment has been taken without providing an opportunity for a hearing as

required by Article II, Section 25," which protects against due process violations. Because we are vacating the summary judgment order and remanding for further proceedings in *Kirkmeyer II*, this argument is not yet ripe.

Kirkmeyer's claim of discrimination based on political affiliation has been rejected by the Board, and we affirm that decision in *Kirkmeyer II*.

### VII. Summary Judgment for Gonzales was Erroneous

Finally, Kirkmeyer contends the trial court erred when it prematurely affirmed Gonzales' decision that Kirkpatrick acted properly in not offering Kirkmeyer a position in the traditional pay plan. The Attorney General replies that a sufficient record was before the trial court and "[t]he Personnel Director . . . did not need to file a separate summary judgment motion" since "the issues in the two cases substantially overlap." (Internal quotations omitted.) We need not address these procedural issues because we have rejected the basis for Gonzales' decision—that section 24–50–104(5)(c) precludes enforcement of the SHC.

▪ On appeal of an action for judicial review under section 24–4–106(7), C.R.S. 2010, as provided for in section 24–50–112.5(4)(b), C.R.S.2010, an appellate court employs the same standard of review as the trial court. We may set aside the agency decision where "the agency . . . erroneously interpreted the law." *Colorado State Bd. of Accountancy v. Paroske,* 39 P.3d 1283, 1288 (Colo.App.2001).

Gonzales agreed with Kirkpatrick's decision not to offer Kirkmeyer a position in the traditional pay plan upon nonrenewal of the SES contract because he—like Kirkpatrick—also considered the SHC unenforceable under section 24–50–104(5)(c). Based on our interpretation of the statute, Gonzales' decision cannot stand.

### VIII. Remand

We vacate the entry of summary judgment in favor of DOLA, Kirkpatrick, and Gon-

zales.[7] For the reasons set forth by the majority in *Kirkmeyer II*, we stay any further proceedings before the district court or Gonzales until Kirkmeyer's action before the Board is final, including any appeal. Such further proceedings, if any, shall be subject to *Kirkmeyer II*.

The judgment is reversed and the case is remanded as directed.

Judge RUSSEL and Judge GABRIEL concur.

---

7. All alleged procedural errors in granting summary judgment are therefore moot.