Michael G. KOPEC, Plaintiff–Appellant,

v.

Tom CLEMENTS, Executive Director of the Colorado Department of Corrections; Rae Timme, Warden of Fremont Correctional Facility; and James Lander, Director of the Sex Offender Treatment and Monitoring Program at Fremont Correctional Facility, Defendants–Appellees.

No. 10CA1744.

Colorado Court of Appeals, Div. III.

Dec. 22, 2011.

Michael G. Kopec, pro se.

John W. Suthers, Attorney General, Chris Alber, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

This case primarily involves whether an inmate who seeks access to his mental health records must first exhaust all available administrative remedies, as required by section 13–17.5–102.3, C.R.S.2011. We conclude that an inmate's action seeking access to such records under section 24–72–305, C.R.S.2011, of the Colorado Criminal Justice Records Act (CCJRA), is not exempt from this requirement, and is therefore premature. Hence, we affirm the trial court's summary judgment against plaintiff, Michael G. Kopec, and in favor of defendants, the executive director of the Colorado Department of Corrections (DOC), the warden of the Fremont Correctional Facility, and the director of the facility's sex offender and treatment program.

## I. Background

Under DOC Reg. 700–19(IV)(A), "[e]ach offender entering [DOC] shall have his/her available records reviewed ... to ascertain sexual violence needs classification" in one of five categories (S1–S5). Inmates classified

S3–S5 are considered "sex offenders" and are encouraged to participate in treatment sessions. If they fail to do so, DOC will withhold earned time credit. *See generally Reeves v. Colorado Dep't of Corrections,* 155 P.3d 648, 652 (Colo.App.2007).

Kopec, an inmate at the facility, was sentenced to the custody of DOC based in part on his conviction for indecent exposure under section 18–7–302(1), (2)(a), C.R.S.2011. Kopec alleges that when he entered the facility, he was classified as a sex offender; this classification was later removed and then reinstated.

After learning that the classification had been reinstated, Kopec requested access to his mental health records, which defendants initially denied. Kopec then commenced this action alleging that defendants: failed to comply with section 24–72–305 by preventing his review of the mental health records; arbitrarily denied him access to those records; and failed to provide him with due process when initially classifying and then reclassifying him as a sex offender.

In response to defendants' motion to dismiss, the trial court gave Kopec an opportunity to amend his complaint and allege exhaustion, but then dismissed the first two claims because the amended complaint "fail[ed] to allege exhaustion in accordance with [section 13–17.5–102.3]." As to the third claim, the trial court concluded that Kopec was "not entitled to further due process given the summary judgment evidence showing [he] has been convicted of a sex offense."

## II. Standard of Review

■ Where, as here, the trial court considers matters outside the complaint in ruling on a motion to dismiss, the motion must be treated as a request for summary judgment. *See* C.R.C.P. 12(b), 56(c). Summary judgment is an issue of law we review de novo. *Newflower Market, Inc. v. Cook,* 229 P.3d 1058, 1061 (Colo.App.2010). Entry of summary judgment is appropriate only where no disputed issue of material fact exists. *Id.* We draw all reasonable inferences in favor of the nonmoving party. *Id.*

## III. Exhaustion of Remedies

Kopec first contends the trial court erred by dismissing his claims for access to mental health records for failure to exhaust administrative remedies. We discern no error.

Section 13–17.5–102.3(1), C.R.S.2011, provides:

No inmate shall bring a civil action based upon prison conditions under any statute or constitutional provision until all available administrative remedies have been exhausted in a timely fashion by the entity operating the detaining facility and inmate. For purposes of this subsection (1), an inmate shall be considered to have exhausted all available administrative remedies *when the inmate has completed the last step in the inmate grievance process* as set forth in the regulations promulgated by the entity operating the detaining facility. Failure to allege in the civil action that all available administrative remedies have been exhausted in accordance with this subsection (1) shall result in dismissal of the civil action.

(Emphasis added.)

"In enacting [section] 13–17.5–102.3, the General Assembly required an inmate to exhaust the last step in the inmate grievance process before proceeding to court." *Glover v. State,* 129 P.3d 1083, 1085 (Colo.App.2005). This intent "is evidenced by the General Assembly's use of the mandatory word 'shall' several times in the statute." *Id.*

### A. Exception to Exhaustion Requirement

■ Kopec does not argue that he filed a grievance or otherwise exhausted his administrative remedies as required by section 13–17–102.3. Nor does he dispute that access to medical records constitutes "prison conditions" under this statute. Rather, he asserts that because his claims involved decisions to classify him as a sex offender, the grievance process was not available, and therefore he was excepted from the exhaustion requirement. This assertion conflates access to his mental health records and reclassification as a sex offender.

"DOC Admin. Reg. No. 850–04 sets forth the grievance process under which an inmate

must first attempt to resolve his complaint informally." *Glover,* 129 P.3d at 1084. That regulation applies to a "broad range of complaints including, but not limited to: policies and conditions within the facility that affect the offender personally; actions by employees and offenders; and incidents occurring within the facility that affect the offender personally." DOC Reg. 850–04(IV)(B)(3). Under DOC Reg. 850–04(IV)(A)(5), however, the grievance procedure "may not be used to seek review of ... classification."

Here, although this dispute arose from defendants' decision to reclassify Kopec as a sex offender, his first two claims alleged only that defendants had improperly denied him access to his mental health records. Such claims do not fall under the classification exception of DOC Reg. 850–04(IV)(A)(5), but are within the "broad range of complaints" subject to the grievance process. Thus, under section 13–17.5–102.3, Kopec was required to complete that process before bringing a civil action to compel access to his mental health records.

Similarly, to the extent Kopec sought mandamus relief under C.R.C.P. 106(a)(2) for access to his mental health records, he must have exhausted his administrative remedies before seeking such relief. *See Egle v. City & County of Denver,* 93 P.3d 609, 612 (Colo. App.2004) ("Mandamus is not appropriate unless all alternative forms of relief have been exhausted.").

### B. Section 24–72–305

■ We also reject Kopec's argument that the exhaustion requirement of section 13–17.5–102.3 does not preclude a claim under section 24–72–305 of the CCJRA.

■ We review matters of statutory interpretation de novo, looking first to the plain language of a statute to determine legislative intent. *Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n,* 183 P.3d 563, 567 (Colo.2008). If the meaning is clear, we apply the statute as written. *Wells Fargo Bank v. Kopfman,* 226 P.3d 1068, 1072 (Colo. 2010).

Initially, we agree with Kopec that his mental health records maintained by DOC are subject to the CCJRA. A "criminal justice agency" includes "any agency of the state" that "performs any activity directly relating to ... correctional supervision, rehabilitation, evaluation, or treatment of ... criminal offenders." § 24–72–302(3), C.R.S. 2011. Thus, DOC is a criminal justice agency. "Criminal justice records" include "documentary materials ... made, maintained, or kept by any criminal justice agency in the state for use in the exercise of functions required or authorized by law or administrative rule." § 24–72–302(4), C.R.S.2011. Therefore, because DOC is responsible for inmates' care, mental health records maintained by DOC constitute criminal justice records. Defendants do not argue otherwise.

Under the CCJRA, certain criminal justice records:

> at the discretion of the official custodian, may be open for inspection by any person at reasonable times, except as otherwise provided by law, and the official custodian of any such records may make such rules and regulations with reference to the inspection of such records as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office.

§ 24–72–304(1), C.R.S.2011. "Any person" denied access to inspect such records "may apply to the district court" for access and a hearing will be held "at the earliest practical time." § 24–72–305(7), C.R.S.2011.

Nevertheless, section 17–1–103, C.R.S. 2011, authorizes the executive director of DOC to adopt policies and guidelines concerning the release of records to "inmates." That section provides:

> (1) The duties of the executive director shall be: ...
>
> (p) *Notwithstanding the provisions* of the "Colorado Open Records Act," part 2 of article 72 of title 24, C.R.S., and part 3 of said article 72, to adopt such policies and guidelines as may be necessary concerning the release of records to inmates.

Section 17–1–103(1)(p), C.R.S.2011 (emphasis added).

The term "notwithstanding" means "excluding, in opposition to, or in spite of other statutes." *Lanahan v. Chi Psi Fraternity,* 175 P.3d 97, 102 (Colo.2008); *see also Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1339 n. 9 (Colo.1997) (noting that *Webster's Third New International Dictionary* 1545 (3d ed. 1986) defines the term "notwithstanding" as "in spite of," "nevertheless," and "without prevention or obstruction from or by"). By using this term, the General Assembly made clear that the executive director's policies and guidelines on the release of records to inmates need not comply with the CCJRA. *See also Crandall v. City & Cnty. of Denver,* 238 P.3d 659, 662 n. 2 (Colo.2010) (a specific statutory provision takes precedence over a more general one).

As pertinent here, DOC Reg. 950–05(IV)(B)(5) governs inmates' access to their records: "[o]ffenders are not permitted to personally review offender records," but "[c]ase managers have the discretion to review the offender record in the presence of the offender." If, as Kopec alleges, a case manager has exercised discretion to deny him access to his records, such a denial constitutes "actions by employees" subject to the grievance process under DOC Reg. 850–04(IV)(B)(3). Hence, because DOC regulates the release of records to inmates and provides administrative remedies, on the arguments presented we conclude that section 13–17.5–102.3 requires that the inmate exhaust such remedies before initiating a civil action under section 24–72–305(7).

Accordingly, we further conclude that the trial court did not err by dismissing Kopec's first and second claims for failing to exhaust his administrative remedies. Having so concluded, we need not address defendants' alternative argument that after having filed this action, Kopec declined an opportunity to review the records at issue.

## IV. Due Process

Kopec next contends the trial court erred by dismissing his due process claim because he did not "participate in his initial sex offender classification," and was not allowed to "challenge any subsequent [ ] reclassifications." Reading these contentions together

and interpreting them broadly, *People v. Bergerud,* 223 P.3d 686, 696–97 (Colo.2010), Kopec may also be contending that his reclassification as a sex offender, without a hearing, violated due process. We reject these contentions because Kopec's initial classification, and later reinstatement of that classification, were based on his having been convicted of a sex offense.

■ "The DOC has broad discretion over the classification and rehabilitation of inmates and the management of prisons." *Reeves,* 155 P.3d at 652. Generally, "a particular classification does not implicate any liberty interest protected by the Fourteenth Amendment Due Process Clause." *Green v. Nadeau,* 70 P.3d 574, 577 (Colo.App.2003); *see also Deason v. Kautzky,* 786 P.2d 420, 422 (Colo.1990) (an inmate has no constitutional right to a particular custody classification). Nevertheless, "an inmate has a liberty interest necessitating due process where the DOC classifies the inmate as a sex offender based on preconfinement conduct not resulting in a sex offense conviction," *Reeves,* 155 P.3d at 652, or on a "preconfinement conviction for a crime not listed as a sex offense under section—16–11.7–102[, C.R.S.2011]." *Id.* However, "where the inmate was previously convicted of a sex offense," the DOC need not provide a hearing because such an inmate "has received the minimum protections required by due process." *Id.* (quoting in part *Neal v. Shimoda,* 131 F.3d 818, 831 (9th Cir.1997)).

■ Here, Kopec has alleged no facts showing that either his initial classification or reclassification as a sex offender was based on unadjudicated conduct. To the contrary, Kopec had been convicted of indecent exposure, which is included in the definition of "sexual offense" under section 16–11.7–102(3)(m), C.R.S.2011. Therefore, we conclude that Kopec has received the minimum due process protections and he was not entitled to a hearing on his sex offender classifications. *See Neal v. Shimoda,* 131 F.3d at 831 ("Prison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.").

■ We also reject Kopec's argument that defendants denied him due process by not allowing him to be present during the classification decisions. Kopec relies on DOC Reg. 600–01 (Offender Classification), which provides that inmates are "allowed to appear" at a classification review. However, classification under DOC Reg. 600–01(III)(D) is "[a] process whereby an offender is reviewed to determine appropriate custody and facility assignment." In contrast, classification under DOC Reg. 750–02(II) (Sexual Violence Needs Classification), identifies offenders "who could benefit from participation in sex offense specific treatment programs and supervision." Nothing in the regulations indicates that review procedures under DOC Reg. 600–01 apply to initial classification or reclassification determinations under DOC Reg. 750–02.

Rather, DOC Reg. 750–02 includes its own provisions for classification review and due process. It provides that "[o]ffenders who have not been adjudicated as sex offenders are entitled to due process procedures," DOC Reg. 750–02(II), and such offenders "shall not be classified as a sex offender unless a sexual violence needs [SVN] classification review has been conducted." DOC Reg. 750–02(IV)(A)(3). But where, as here, "[a]n offender ... has received judicial determination by conviction ... [under] section 16–11.7–102," the offender "is not entitled to a [SVN] classification review." DOC Reg. 750–02(III)(E). This limitation conforms to controlling case law. *Reeves*, 155 P.3d at 653.

Accordingly, we conclude that the trial court did not err in dismissing Kopec's due process claim.

## V. Remaining Issue

We decline to address Kopec's remaining issue—that defendants are illegally applying DOC Reg. 700–19 retroactively—because he raised it for the first time in his reply brief. *See People v. Grant*, 174 P.3d 798, 803 (Colo. App.2007).

The judgment is affirmed.

Judge ROY and Judge FOX concur.